McCLENDON, Judge Pro Tempore.
The defendant was convicted by a jury on August 14, 1970 of perjury in violation of LSA-R.S. 14:123 and was sentenced to six years at hard labor. No timely appeal was perfected. However, on application by defendant in proper person for remedial writs, the trial court was ordered by the Louisiana Supreme Court on March 4, 1983 to grant an out-of-time appeal to this court.
We affirm.
On July 16 through the 19th, 1979, the trial of State v. Edward Charles Jackson, No. 38,867, was held in the Fourth District Court, Ouachita Parish, Louisiana. Jackson was charged with two counts of aggravated rape and one count of burglary, all allegedly committed on the night of March 17 and morning of March 18, 1979.
The State’s evidence at that trial consisted of the testimony of not one but a number of witnesses who saw Jackson at various locations in the Monroe area between 9:30 and 11:30 P.M. on the night of March 17, 1979. In several of those places he was seen driving a red pickup truck belonging to a Roberta Fleeman, Jackson’s cousin. This truck was taken from the parking lot of the White Front Bar where Ms. Fleeman tended bar, on the evening of March 17, 1979, and was reported stolen by Ms. Flee-man shortly before one o’clock A.M. on the 18th of March.
Jackson was in the dormitory room of Tammie Powers, victim of the rape, from 12:30 A.M. until about 3:00 A.M., according to Ms. Powers’ testimony.
Monroe police officer Tommy Taylor spotted Jackson driving the stolen pickup truck at about 4:30 A.M. on March 18, 1979. He recognized Jackson, gave chase, and apprehended him with the aid of another officer after Jackson abandoned the truck and fled on foot. Officer Taylor described the truck as orange in color, with black trim rather than red with black trim, but it was the missing pickup of Ms. Flee-man.
Completely contrary to this was the testimony of A.J. Hooker, who was called as a witness for Jackson. He testified that he and Jackson were together gambling from 7:00 P.M. on March 17, 1979, first at Jack Potts’ Checkerboard No. 1 on DeSiard Street in Monroe, until it closed between eleven P.M. and midnight, and then at Checkerboard No. 2 on Louberta where they sat around, danced, and drank beer *771 until Hooker left between one and one-thirty A.M., leaving Jackson still there.
After Jackson was convicted, A.J. Hooker was charged with perjury based upon his testimony outlined above and set out in detail in the bill of information filed in the •case presently before this court on appeal.
Defendant Hooker filed four assignments of error to his conviction and sentence:
No. 1. The State failed to prove that the oath was given properly and, further, that the statement given by the defendant was a material statement such as to justify a conviction for perjury.
No. 2. The sufficiency of the evidence to support a criminal conviction based upon circumstantial evidence and viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could not have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded.
No. 3. The trial court erred in that the sentence given is cruel, unusual and excessive and is, therefore, unconstitutional under the Louisiana Constitution.
No. 4. The trial judge failed to comply with the La. Code of Criminal Procedure, Article 894.1 in stating his reasons for sentencing.
In his brief concerning Assignment of Error No. 1, defense counsel conceded that the motion made for a directed verdict at the conclusion of the State’s evidence was not available to defendant in a jury trial. He stated that the basis of the motion had been that the State had not proved its case in that there was no testimony as to the qualifications of the individual administering the oath to defendant and this was one of the critical elements of proof in a perjury case.
Even had defense counsel chosen a proper vehicle to assert his objection to the sufficiency of the oath administered to his client, his argument would have been without merit.
The record reflects that defendant was sworn before his testimony was given in the Jackson trial. Two court reporters testified that the oath was administered to defendant by Dorothy Dunn, a deputy clerk of court of Ouachita Parish. The portion of the tape whereon the administering of the oath was recorded was filed in evidence and played.-to the jury in this case, and the minutes of the trial court were filed in evidence in further substantiation of these proceedings and the court officials participating.
Defense counsel made no argument in his brief as to the materiality of the statement given by defendant and is presumed to have abandoned that portion of this assignment. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
Assignment of Error No. 2 strikes at the sufficiency of the evidence upon which defendant’s perjury conviction was obtained. More specifically, it addresses the nature of circumstantial evidence required to sustain.
We find no need to deal with this assignment at great length.
LSA-R.S. 14:123 defines the crime of perjury as follows:
Perjury is the intentional making of a false written or oral statement in, or for use in, a judicial proceeding, or any proceeding before a board or official, wherein such board or official is authorized to take testimony. In order to constitute perjury the false statement must be made under sanction of an oath or an equivalent affirmation, and must relate to matter material to the issue or question in controversy.
It is a necessary element of the offense that the accused knew the statement to be false; but an unqualified statement of that which one does not know or definitely believe to be true is equivalent to a statement of that which he knows to be false.
Whoever commits the crime of perjury shall be punished as follows:
*772 (1) When committed on a trial for any felony, by imprisonment at hard labor for not more than ten years.
(2) In all other cases by a fine of not more than one thousand dollars, or by imprisonment, with or without hard labor, for not more than five years, or both.
We have only to review the testimony of the following witnesses, who testified as to Jackson’s whereabouts on the night of March 17 and the early hours of March 18, 1979, to conclude Jackson could not have been gambling and drinking with A.J. Hooker at Checkerboard No. 1 and No. 2 the entire time between 7:00 P.M. and 1:30 A.M. Roberta Fleeman, Jackson’s cousin, testified Jackson was in her bar at 9:30 or 10:00 P.M. Mathis Lee Newman testified she had known Jackson for a year and that he was at the gas station where she worked around 11:15 P.M., in a red pickup truck she recognized as belonging to Roberta Fleeman. Areola Johnson, who worked with Ms. Newman, also testified Jackson was at the gas station at 11:15 P.M. and asked her to go out with him. Both testified Jackson followed the car they were in when they left work at 11:20 P.M. until their driver eluded him by driving through a housing project. Jackson’s victim testified that Jackson was in her dormitory room from 12:30 to 3:00 A.M.
As pointed out earlier herein, A.J. Hooker testified under oath contrary to all four of these witnesses that defendant Jackson was with him from 7:00 P.M. on March 17, until around 1:30 A.M. the following morning.
Notwithstanding the charge of perjury against him, in his own trial he again took the witness stand and repeated the statements he had made in the Jackson trial almost verbatim and declared they were still true.
The jury in this case did not have to rely upon circumstantial evidence. It had only to choose whom it believed — Roberta Flee-man, Mathis Lee Newman, Areola Johnson and Tammie Powers — or A.J. Hooker. It chose to believe the four witnesses over Hooker, as did the earlier jury in the Jackson trial.
Had defendant attempted to qualify his testimony in some manner such as, for example, suggesting that he may have been mistaken as to the night he was with Jackson, it is possible the jury in this case could have found reasonable doubt as to his guilt of perjury. He was adamant, however, that he and Jackson were together all evening and into the early morning of the day on which he learned Jackson had been arrested and charged with rape.
Applying the sufficiency test of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence in this case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to conclude that the essential elements of the crime were proved beyond a reasonable doubt.
Defense counsel’s argument that defendant Hooker is a person of limited education and did not understand the seriousness of his testimony or that it was true “to the best of his information, knowledge and belief” is just not sustained by the testimony itself. Hooker was given every opportunity to qualify his testimony, but did not.
This second assignment is without merit.
Assignments No. 3 and 4 were combined by defense counsel for argument in his brief, claiming that the trial court failed to comply with C.Cr.P. Art. 894.1 and imposed an excessive sentence.
In sentencing the defendant the trial judge, in compliance with Art. 894.1, stated for the record the following factors: defendant had plead guilty to attempted simple burglary in 1976; he had a simple burglary conviction in addition to several misdemeanor convictions; the seriousness of the offense of perjury and the fact that a lesser sentence would deprecate the seriousness of the crime. Based on these factors he sentenced the defendant to six years at hard labor, to be served consecutively with any other sentence he was serving.
*773 The defendant was subject to a maximum prison term of ten years. Considering this and the trial court’s adequate compliance with Article 894.1, a six year sentence is not excessive.
For these reasons, the conviction and sentence are affirmed.