334 So.2d 415 (1976)
STATE of Louisiana
v.
James CARNEY.
No. 57579.
Supreme Court of Louisiana.
June 21, 1976.
*416 Clyde D. Merritt, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant, indicted for the second degree murder of Rosemary Coleman, was convicted and sentenced to life imprisonment. He appeals, raising nine of the twelve assignments of error he perfected during and after trial. Because we find merit in two assignments, we limit our discussion to these.

Assignment of Error No. 12
Defendant contends the trial court erred in denying his motion for a new trial based on the discovery of new evidence. The alleged new evidence was an arrangement between the district attorney's office and the State's witness Lois Lewis for the State to dismiss battery charges pending against her in exchange for her testimony at trial. Prior to trial, defendant had requested "evidence materially favorable to the defendant either as direct or impeaching evidence." The State replied it had none.
A correct disposition of the case requires a summary of the testimony at the trial on the merits as well as at the motion for a new trial.
At the trial on the merits Alice Ford gave the following testimony: Ford, Lois Ann Lewis and the victim were walking toward Zalia's Bar late Friday, April 27, 1974. They were approached by defendant "who seemed in an easy frame of mind." Defendant took the victim by the arm saying he wanted to "talk to her," said "good night ladies" to Ford and Lewis, and took the victim aside. Soon thereafter, Ford heard a sound like a "firecracker," ran inside the bar, heard another similar sound, and later saw the victim lying on the floor inside the bar. It was not until officers turned the victim over that Ford saw a knife hidden in the area of her bra. Defendant and the victim had recently terminated a "common law" relationship.
At the trial on the merits Lois Ann Lewis gave the following testimony: As Lewis, Ford and the victim approached the bar, defendant came up and "grabbed" the victim "like he was mad" and pulled her *417 aside. Defendant told the victim he wanted to speak to her but there was no other conversation; defendant did not say "good night ladies" to Ford and Lewis. Ford turned and walked toward the bar, but Lewis turned to see if defendant and the victim were fighting. She saw defendant produce a pistol and fire at the victim's chest, though the victim made no movements toward him. The victim then ran inside the bar and a second shot was fired, but it hit the door. Lewis did not see a knife until persons from the coroner's office arrived and removed the victim's bra.
Officer Morgan gave the following testimony: He arrived after the emergency unit had come, declared the victim dead, and left the scene. When he first saw the body, only a white handkerchief wrapped around a knife was visible from inside the victim's bra; he partially withdrew the knife for purposes of photographing.
At the motion for a new trial, Robert Zibilich gave the following testimony: Zibilich represented Lois Lewis in a battery charge lodged against her by the district attorney's office. In negotiations with an assistant prosecutor, Chen, an agreement was reached whereby the charge would be dropped after Lewis testified in the instant case. The arrangement was not brought to the attention of the presiding judge or defendant's attorney; it was kept between the district attorney's office, Zibilich and Lewis. Zibilich told Lewis her case would "probably be dismissed." When Lewis was asked if she planned to testify, she said, "I've been subpoenaed and I plan to testify." When the trial court asked, "Was there any discussion betweenwith you and your client to the effect if she did not want to testify?" Zibilich answered, "She didn't mention it one way or the other to me." The charge against Lewis stemmed from a fight which happened after unnamed persons were "trying to pick on" Lewis because of her plan to testify in this case.
It was stipulated at the motion for a new trial that assistant district attorney Armstrong, who prosecuted defendant, had no knowledge of the arrangement.
Ronald Monroe, successor to Chen, testified at the motion for a new trial as follows: He submitted the case against Lewis for nolle prosequi "in exchange for cooperation and testimony of defendant in the James Carney murder trial . . . also. . . investigation shows defense of self-defense would be used in trial of this case." Monroe was unaware that a motion for exculpatory evidence had been filed in the instant trial.
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the court was faced with a situation in which a government witness named Taliento, whose testimony was important to the government's case, was promised by an assistant United States attorney that he would not be prosecuted if he testified against Giglio. The record indicated that the assistant was not authorized to make the promise and that he failed to inform his superiors once he had made the promise. Finding that the fact that the promise was unauthorized and uncommunicated was not controlling; the court held "the prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government." 92 S.Ct. 763, 766. The court concluded by finding that the evidence not *418 given upon defendant's request was "material" under Brady:
"Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it." 92 S.Ct. 763, 766.
See also Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); DeMarco v. United States, 415 U.S. 449, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974); Favor v. Henderson, Docket 17,628-S, Western District of Louisiana, affirmed 489 F.2d 1311 (5th Cir. 1974).
In his per curiam to this court, the trial court found there was "no intentional withholding of these facts from defense counsel" and that the evidence sought was not "exculpatory . . . but if known at the time of trial to defense counsel, could only have been used in an attempt to discredit the witness, Lois Lewis." He further noted that the testimony of other witnesses was "substantially the same" as Lewis'.
It is clear from Giglio v. United States, supra, that the fact that the information was withheld inadvertently is not controlling. And Giglio leaves no doubt that, if the witness' testimony is important to the case, the fact that the evidence of a bargain between the witness and the state could be used only to "discredit the witness" does not take the case out of the reach of Brady; see also DeMarco v. United States, supra.
Miss Lewis' testimony was important to the State's case. She was the only witness who testified at trial that she saw defendant shoot the victim without provocation. No less than two witnesses testified they saw a knife wrapped in a handkerchief partially protruding from the victim's bra. The State must prove beyond a reasonable doubt that the killing was not committed in self-defense. State v. Patterson, 295 So.2d 792 (La.1974) and cases there cited.
The State contends the cases relied on above, Brady, Giglio, Napue and DeMarco, do not apply to the case before us. Three arguments are made in support of this contention.
First, because Lois Lewis is not a coparticipant with defendant in the crime for which he stands convicted, the State contends these cases do not apply. Although each case cited above was occasioned by an arrangement between the government and a witness who allegedly had participated in the crime for which the defendant was being tried, the State points to no language in any of these cases, and there is none, by which the court limited its holding to witnesses who had participated in the very crime for which the defendant was on trial. The relevant aspect of each case was the fact that important testimony was given by a witness whose reason for bias had been concealed.
Furthermore, the State's argument fails to consider Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In Davis, one of the state's crucial witnesses testified he saw the defendant with a crowbar in his hand standing near the location where a stolen safe was later found. The witness was not defendant's alleged co-participant. The defendant sought to introduce evidence to show the witness was on probation from a juvenile adjudication and may have testified in order to shift suspicion from himself or as a result of undue pressure caused by the possibility of probation revocation. The trial court ruled, according to Alaska law, that juvenile adjudications were privileged, therefore inadmissible. The United States Supreme Court reversed, finding the state's *419 interest in preserving the anonymity of juvenile adjudications secondary to the accused's right "to probe into the influence of possible bias in the testimony of a crucial identification witness." There is no doubt that Brady and Giglio would apply had the state failed to inform defendant, after a proper request, of the witness' juvenile adjudication.
Second, the Brady line does not apply because Lois Lewis allegedly was unaware of the agreement, the State contends. The record does not support this contention. It reflects Lewis' attorney told her the charge against her "would probably be dismissed." He asked her whether she was planning to testify, and she responded, "I've been subpoenaed, and I plan to testify." Further, the evidence shows that the case was nolle prossed at least partially in exchange for Lewis' testimony.
Third, the State contends Brady does not apply because at trial defense counsel did not ask Lewis whether her testimony was given in exchange for an agreement with the prosecution. This contention misses the mark of Brady and Giglio. Defendant properly requested the information, and the State said it had none. The State cannot now cite defendant's reliance on the State's response as a failure on defendant's part to act diligently.[1] Nothing in these cases requires counsel to ask each witness whether his testimony is given as a result of an agreement with the prosecution where the prosecution has advised defendant that no such arrangement exists.
Lewis' testimony was important to the case, and the State failed, after defendant's proper request, to inform him of the agreement between it and Lewis. Brady, Giglio and Davis require reversal.
We also find merit in defendant's eighth assignment of error. During closing argument, the prosecutor made the following remark, in response to which defendant requested a mistrial:
"You did hear testimony of a relationship between James Carney and the victim Rosemary Coleman, that they had lived as husband and wifecommon law marriageand that this relationship had come to an end, as one witness stated, 4 days earlier. I submit, gentlemen that this is your motive.
"For some reason, reasons we are not privileged to knowand only the defendant knows"
This was an indirect reference to the defendant's failure to testify, and it alone would require reversal of defendant's conviction. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); C.Cr.P. 770(3).
Accordingly, the conviction and sentence are reversed and set aside, and the case is remanded for a new trial.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., dissent.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs in the majority opinion and decision on the basis of assignment of error No. 12 only.
CALOGERO, Justice (concurring).
I concur in the majority opinion because I agree that the trial court erred in denying Carney's motion for a new trial on the basis of newly discovered evidence (assignment of error number 12). I do not agree, however, that the prosecutor's comment was an indirect reference to Carney's failure to take the stand (assignment of error number eight). In this latter respect I find the case indistinguishable from State v. Smith, 327 So.2d 355 (La.1976).
NOTES
[1] In brief to this court, the State alleges that defense counsel did not exercise due diligence because both he and Lewis' attorney were employed by the office of the indigent defender. The record does not reflect that Zibilich was employed by that office, nor does the argument have merit if, in fact, he was.