338 So.2d 672 (1976)
STATE of Louisiana
v.
Michael A. WILLIAMS.
No. 58035.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*673 Robert J. Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
On the evening of December 28, 1973 in New Orleans, Louisiana, a man approached Joseph King, who was walking with his wife Kay, and shot at him, hitting him twice. King died, and his wife identified Michael Williams as the man who killed her husband. Williams was charged with second degree murder, tried by jury in April of 1974, found guilty as charged, and sentenced to life imprisonment without benefit of parole, probation, or commutation of sentence for twenty years. Williams now appeals that conviction and sentence, relying on four assignments of error.[1]
ASSIGNMENT OF ERROR NO. 3.
Defendant alleges that the testimony of the state's expert witness, Dr. George Bailey, that the victim died of the bullet wound in his chest rather than the one in his buttock, should not have been allowed into evidence because the best evidence of the cause of death was the autopsy report. R.S. 15:436. Dr. Bailey, who is an assistant coroner for Orleans Parish, examined the victim at the scene of the crime and pronounced him dead. He did not perform the autopsy.
Dr. Bailey was qualified as a medical expert and accepted as such by the defendant and the court. La.R.S. 15:466. He offered his opinion as an expert that the victim, whom he had examined, died from a particular gunshot wound. Although the autopsy report, which was later introduced into evidence by the state, was also competent evidence of the cause of death, it was not the only evidence the state could offer as to the cause of death. See State v. White, 321 So.2d 491 (La.1975); State v. Sneed, 316 So.2d 372 (La.1975). The best evidence rule, urged as controlling by defendant, requires the production of an original writing which is within a party's control *674 in order to prove its contents.[2] 21 Loy.L. Rev. 450 (1975); McCormick, Law of Evidence § 196, at 409 (Hornbook ed. 1954). That rule does not apply in a case such as this one where the nature of the testimony was opinion evidence as to the cause of death.
The assignment lacks merit.
ASSIGNMENT OF ERROR NO. 4.
Defendant Williams contends the trial court erred when, over his objection, it admitted four photographs of the deceased's body as it was found at the scene of the crime.
The photographs are black and white representations of the victim's body. They depict the victim lying on the sidewalk where he was shot. Each of the four photographs shows him from a different angle; each shows blood on the victim and sidewalk.
The test of admissibility of photographs in Louisiana criminal trials is whether the probative value of the photographs outweighs their probable prejudical effect. State v. Smith, 327 So.2d 355 (La.1976). Measured against this standard, we find that the photographs were admissible. The testimony which preceded the introduction of these photographs indicated that they were used by the state's witnesses to identify the victim. Dr. Bailey testified that he examined the person, in the pictures and pronounced him dead; Mrs. Kay King identified the victim as her husband.
Furthermore, the photographs could have had little or no prejudicial effect. They are black and white photographs portraying a man, fully clothed, lying on the sidewalk without gaping wounds or protruding organs. Although a dead persons' picture is always unpleasant viewing for a person unaccustomed to such pictures, these four pictures contain nothing which could have inflamed or prejudiced the jury.
We find that the four photographs were admissible at trial.
ASSIGNMENT OF ERROR NO. 7.
Defendant assigns as error the trial judge's denial of his request for two special jury charges, one relative to the impeachment of witnesses and the other relative to the role of attorneys in objecting to evidence.
The requested instructions were these:

IMPEACHMENT OF WITNESS
A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something or has failed to say or do something, which is inconsistent with the witness' present testimony; or by evidence that the witness has been convicted of a crime; or by evidence that the general reputation of the witness for truth or for moral character is bad in the community where the witness now resides, or has recently resided.
If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.
When impeaching evidence is received, such evidence must not be considered as proof of defendant's guilt, but is to be considered only for impeachment purposes.
The only value of impeachment by prior inconsistent statement is to discredit the courtroom testimony of the witness. A prior statement made by the witness has no probative value. This evidence is not admitted for the proof of the facts contained in or truth of the statement, but only to prove that a statement at some prior time is inconsistent or contrary to the one made on the witness stand in court. You may consider it only for the purpose of weighing the credibility of the witness. No part of it can be used as substantive evidence.

*675 OBJECTIONS
It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As stated before, the jurors are the sole judges of the credibility of all witnesses, and the weight and effect of all the evidence. When the Court has sustained an objection to a question, addressed to a witness, the jury must disregard the question entirely and may draw no inference from the wording of it, or speculate as to what the witness would have said if permitted to answer any question.
Article 807 of the Louisiana Code of Criminal Procedure governs the duty of the trial judge to give special charges requested by the parties. It provides in pertinent part that:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The requested charge on impeachment of witnesses was not pertinent to the case at hand because at no point in the trial was any evidence admitted for the purpose of impeaching the credibility of any witness. Therefore, there was no requirement that the trial judge inform the jury that prior inconsistent statements are admissible only on the issue of a witness' credibility, and not as substantive evidence of a defendant's guilt.
With reference to the second charge, the trial judge did not err in refusing to instruct the jury in the manner requested because the jury was sufficiently instructed in the general charge that it was to base its verdict only on the evidence. The trial judge instructed the jury as follows:
You are prohibited by law and your oath from going beyond the evidence to seek for doubts upon which to acquit the accused, but must confine yourselves strictly to a dispassionate consideration of the testimony upon the trial. You must not resort to extraneous facts or circumstances in reaching your verdict . .
You are to be governed exclusively by the evidence and the law as heard by you in this court. . . .
You are the exclusive judges of the facts. You find from the evidence what facts have been proven, and what facts have not been proven. For this purpose, you are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You are to give that degree of credence to the testimony of a witness as you are impressed by his or her veracity.
In determining the credibility of witnesses, you may take into account his or her manner on the witness stand, the probability or improbability of his or her statement, the interest or want of interest he or she may have in the case, and every fact and circumstance surrounding the giving of his or her testimony which may aid you in weighing his or her statement.
If you believe that any witness in the case, either for the State or the defense, has willfully and deliberately testified falsely to any material fact for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing or unworthy of belief. You have the right to accept as true, or reject as false, the testimony of any witness accordingly as you are impressed with his or her veracity.
In these instructions, the trial judge repeatedly cautioned the jurors that they were to base their verdict only on the evidence and made it clear that only the jurors judge the credibility of witnesses. These general instructions covered the substance *676 of the special charge on attorneys' objections which defendant had requested.
The trial judge's rulings refusing to give defendant's special charges were correct.
ASSIGNMENT OF ERROR NO. 8.
Defendant Williams contends the trial court committed reversible error when it denied his motion for a new trial which was based on his claim[3] that the state allowed a key witness (Kay King) to give false and misleading testimony to the jury on matters that bore directly and indirectly on the issue of defendant's guilt and her credibility. Further, defendant claimed that the state withheld facts and information which were favorable to the defendant notwithstanding that they had been ordered, pre-trial, to disclose any such Brady materials. In particular, defendant alleged that the state did not advise defendant that several months before the instant trial, it had nolle prosequied a burglary charge against the key witness Kay King.
The state's case against defendant Williams consisted of testimony by Dr. Bailey who established the corpus delicti and the cause of death; testimony by the detective who investigated the crime and arrested the defendant; and testimony by Mrs. Kay King, wife of the victim. Mrs. King identified the defendant as the murderer; her testimony was critical to the state's case. Only her identification linked defendant Williams to the shooting. Thus, Mrs. King's credibility was a crucial aspect of the state's case.
Under cross-examination, Mrs. King was questioned as follows:
Q. On the evening that this occurred, had you beenhad you had anything to drink that evening?
A. No.
Q. Had you had any narcotics within a few hours of that time?
A. No.
Q. Had you had any methadone within a shortwithin a few hours of the time that this happened?
A. No.
Q. You do take those drugs, don't you, Mrs. King?
A. No, I don't.
Q. You don't?
A. I don't.
Q. Never?
A. I didn't say, "never"; but I don't.
Q. How about today, Mrs. King?
A. No.
Q. You didn't take any methadone before you came here?
A. I didn't take anything before I came here.
* * * * * *
Q. Do you know a man by the name of Robert Williams?
A. I don't know. Does he have an alias? Is there an alias?
Q. Do you know a Robert Williams whose address is in the seventeen hundred block of Washington Avenue?
A. No. I don't know Robert Williams in the seventeen hundred block of Washington Avenue.
Q. Do you recall being in Court on March 19th of this year?
A. Yes, I do.
Q. Were in Court with a Robert Williams on that date?
MR. VOLTZ:
I'm sorry. What was that question, Your Honor?
MR. RAKOSKY:
Was she in Court with a Robert Williams on that date?
THE WITNESS:
Yes.
EXAMINATION BY MR. RAKOSKY:
Q. That wasn't in connection with this case, was it?
A. No, it wasn't.
*677 The trial court conducted a hearing on the new trial motion at which it was revealed that Mrs. King had been enrolled in a methadone clinic at the time the shooting occurred. Moreover, it was shown, as alleged, that a burglary charge against her had been nolle prosequied several months before defendant Williams' trial. At the hearing, Robert Early, an Orleans Parish Assistant District Attorney, testified that, pursuant to a request by the court and defense counsel subsequent to the trial, he had inquired with the methadone clinic to determine whether Mrs. King had ever been a patient there. He learned that she had been a patient at the clinic for about eighteen months, but had not been at the clinic on April 30, the date of the trial, nor did she come any of the days from April 25th through the first of May. He was not asked, nor did he say, whether she had received her daily dose of methadone on the day that her husband was shot (although her period of methadone treatment included the date of the shooting).
Mr. Early also testified that a few months before the trial he had nolle prosequied a burglary charge against Mrs. King for simple burglary of Robert Williams' home. He was never asked if this action was pursuant to an agreement between the prosecutor's office and Mrs. King that she would testify against defendant Williams if the non-related burglary charge were dropped, and there is nothing else in the record to indicate that Mrs. King agreed to testify in response to favorable treatment by the state.
When a key witness testifies because of an agreement struck between a prosecutor and the witness, that information must be revealed to the defendant. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Carney, 334 So.2d 415 (La.1976). And if a prosecutor allows a state witness to give false testimony without correction, a conviction gained as a result of that perjured testimony must be reversed, even though the testimony may be relevant only to the credibility of the witness. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).
In the case now before us, it was neither alleged nor shown that the prosecutor's action in nolle prosequing the burglary charge against Mrs. King was negotiated in exchange for her testimony nor that she was otherwise promised anything. Indeed, there is no evidence that there was any relationship at all between the nolle prosequi and the witness' testimony. The fact that an unrelated charge has been dropped against a state witness, standing alone, does not offend defendant's right to due process, and, absent the additional showing that her testimony was bargained for, does not violate the proscription set down in Giglio and Brady.
Defendant further alleges that the state allowed Mrs. King to testify falsely when she answered questions concerning her use of methadone and when she allegedly denied knowing one Robert Williams. It was not clearly shown that Mrs. King lied (as opposed to employing a mental reservation) when she answered the prosecutor's question as to drug use. She did answer "No, I don't" when asked if she took "those drugs," an apparent reference to methadone, but when pressed she said "I didn't say `never'; but I don't." She denied at trial having taken methadone or "anything" on the day she testified at trial, and this was corroborated at the hearing on the motion by the testimony presented. Indeed she had not appeared at the methadone clinic for her daily dosage on the day of the trial. She was not questioned at the trial about whether she had ever taken drugs. Even if we concede that her responses in this regard were untruthful, there was no showing that the prosecutor knew that was the case. Furthermore, there was no showing that the prosecutor at the time of trial knew that the witness was a patient at the methadone clinic.
*678 With respect to the witness' acquaintance with Robert Williams, at trial she misled no one, for she candidly admitted having been in court with Robert Williams on March 19th on an unrelated matter. Her testimony, therefore, was not false testimony which the state allowed to go uncorrected, violating the proscriptions of Napue and Alcorta.
Therefore, we find that defendant Williams' right to a fair trial was not violated by the testimony of Mrs. King, and that the district court correctly denied defendant's motion for a new trial.
While there is no merit to any of defendant's assignments of error, it is apparent that the sentence imposed, life imprisonment without benefit of parole, probation or commutation of sentence for twenty years, is improper. Gubernatorial pardon or commutation, constitutionally permitted, may not be precluded by the terms of an imposed sentence. La.Const. art. IV, § 5 (1974); State v. Varice, 292 So.2d 703 (La.1974).
For the reasons stated above, defendant's conviction is affirmed, but his sentence is vacated and set aside. The case is remanded for resentencing in accordance with the foregoing.
NOTES
[1] Although defendant perfected eight assignments, only four of these have been briefed by counsel so that the other four are deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974).
[2] We are not unaware of that jurisprudence which applies the best evidence rule to evidence other than writings. State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. McCrory, 237 La. 747, 112 So.2d 432 (1959). But see State v. Fallon, 290 So.2d 273 (La. 1974).
[3] The motion for new trial raised a second issue, the composition of the grand jury which returned the indictment against defendant Williams, but no testimony was given on this ground at the hearing on the motion for new trial, and it was not argued in defendant's brief.