454 So.2d 116 (1984)
STATE of Louisiana
v.
Joseph JACKSON.
No. 83-KA-0718.
Supreme Court of Louisiana.
June 25, 1984.
Rehearing Denied September 14, 1984.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, *117 Dist. Atty., William Campbell, Julie LeBlanc, Asst. Dist. Attys., for plaintiff-appellee.
Dwight Doskey, Robert Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
WATSON, Justice.
Defendant, Joseph Jackson, was convicted of first degree murder in violation of LSA-R.S. 14:30 and sentenced, on the jury's recommendation, to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant has appealed his conviction and sentence, arguing that a mistrial should have been granted because the prosecutor indirectly commented on his failure to testify. LSA-C. Cr.P. art. 770.[1]

FACTS
The murder victim, Alfred Williams, was shot twice, once in the back of the head; and once in the neck. The body was found in a wooded area wrapped in a multicolored sheet and covered with the hood of an abandoned car. The murder weapon was recovered from one Bernice Jones when she emerged from a motel room where defendant was staying. The shooting took place at defendant's home in Orleans Parish on March 24, 1979. A number of people were present, including: Monica Walton Armstead, defendant's girlfriend; Gladys and Anthony Porea; Irvin "Snake" Anderson; Bernard "Chatty" Henderson; and Keith Armstead, Monica's brother.[2] Of the many available witnesses, all but Bernard Henderson testified for the state. Their testimony leaves no doubt about what happened.
Defendant borrowed Tony Porea's pistol about an hour before the shooting. Bernard Henderson and Alfred Williams arrived at the residence separately. Jackson apparently believed that Henderson and Williams had come to kill him. Henderson had some guns which he put on the kitchen table. Irvin Anderson and Keith Armstead saw defendant shoot Williams about fifteen or twenty minutes after Williams arrived at the house; Monica Armstead heard the shot from an adjoining room. Williams fell to the floor. It was then apparent that he had a derringer in his waistband. After Jackson shot Williams, he chased Henderson out of the house. Henderson departed in a truck. Jackson returned to the house and shot Williams a second time in the presence of Irvin Anderson and Monica Armstead. Defendant Jackson, Irvin Anderson, and possibly Anthony Porea took away the body in Porea's car.
During closing argument, the prosecutor stated:
"the defense did not put on any witnesses, and they don't have to, as we stated earlier. They don't have to say anything ." (Tr., State's Closing Argument, p. 13)
After an off the record discussion, the prosecutor reiterated:
"the defense does not have to put any witnesses on, they don't have to say anything. In this case they chose to do that. They chose not to put any witnesses on,..." (Tr., State's Closing Argument, p. 13)
It is argued that the prosecutor's remarks deliberately focused the jury's attention on *118 defendant's failure to take the witness stand.[3]

CONCLUSION
LSA-C.Cr.P. art. 770 prohibits both direct and indirect references to defendant's failure to testify. However, when the allusion is indirect, it constitutes reversible error only when the prosecutor intended to emphasize defendant's failure to testify. State v. Smith, 327 So.2d 355 (La., 1976); State v. Burkhalter, 428 So.2d 449 (La., 1983).
A statement that the state's evidence is uncontradicted is not necessarily a prohibited comment on defendant's failure to testify. State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); State v. Reed, 284 So.2d 574 (La., 1973). Compare State v. Robinson, 112 La. 939, 36 So. 811 (1904). However, when defendant is the only person who can dispute the state's evidence, a reference to testimony as uncontroverted constitutes reversible error. State v. Perkins, 374 So.2d 1234 (La., 1979). Similarly, a reference to something "only the defendant knows" is a prohibited reference to defendant's failure to testify. State v. Carney, 334 So.2d 415 at 419 (La., 1976). However, when there are other possible witnesses, an argument that the state's case is unrebutted does not focus the jury's attention on defendant's failure to testify. State v. Smith, 433 So.2d 688 (La., 1983); State v. Latin, 412 So.2d 1357 (La., 1982). Here, there were numerous witnesses who could have testified for defendant. Therefore, the prosecutor's remarks did not focus the jury's attention on defendant's failure to testify. State v. Smith, 433 So.2d 688 (La., 1983); State v. Latin, supra. It cannot be inferred that the prosecutor intended to emphasize defendant's failure to testify. State v. Smith, 327 So.2d 355 (La., 1976); State v. Burkhalter, supra. Even if such an inference were justified, the evidence of guilt is overwhelming, and any error was harmless. United States v. Hastings, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).
Since defendant's only argument is without merit, his conviction and sentence are affirmed.
AFFIRMED.
CALOGERO, J., concurs.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
The statements complained of do not isolate or refer to defendant's failure to testify since there were numerous witnesses, other than the defendant, who could have testified and to whom the prosecutor's remarks easily could have referred. Therefore, I agree that the allegedly improper remark did not focus jury attention on defendant's failure to testify.
However, I disagree with the majority's conclusion that, even if the prosecutorial remark constituted a reference to the defendant's failure to take the stand, the error would have been harmless. The federal harmless error rule, as stated and applied in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), is the standard most compatible with this Court's view of its own criminal appellate jurisdiction. Whether there is a reasonable possibility that the constitutional error complained of might have contributed to the conviction is a question of law to which our appellate jurisdiction extends. Although the standard requires a reviewing court to consider the evidence in order to determine if there is a reasonable possibility that the error had prejudicial effect, it does not permit a court to substitute for the verdict its judgment of what the jury would or should have decided in the absence of error. State v. Gibson, 391 So.2d 421, 427 (La.1980).
An appellate court should not find harmless error merely because it believes that *119 the other evidence is overwhelming. The question is not whether the jury arrived at the correct verdict, regardless of the error or its effect upon the jury. The proper query is what effect the error had or reasonably may be taken to have had upon the jury's decision. "The crucial thing is the impact of the thing done on the minds of other men, not on one's own, in the total setting." Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), Justice Stevens concurring.
NOTES
[1] LSA-C.Cr.P. art. 770 provides in pertinent part:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
"(3) The failure of the defendant to testify in his own defense; ..."
[2] An unidentified defense witness apparently came from California for the trial but did not testify. Anthony Porea, when testifying for the state, said he was currently living in Oakland, California and was too drunk at the time of the shooting to remember anything. Gladys Porea also did not remember seeing or hearing anything.
[3] Defense counsel did not request that the jury be instructed not to draw an adverse inference from defendant's failure to testify. See Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) and James v. Kentucky, ___ U.S. ___, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984).