709 So.2d 810 (1998)
STATE of Louisiana
v.
Dexter O'Neal ARVIE, Defendant-Appellant.
No. CR97-990.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1998.
*811 C. Brent Coreil, District Attorney, for State.
Paula C. Marx, Lafayette, for Dexter O'Neal Arvie.
Before YELVERTON, WOODARD and AMY, JJ.
AMY, Judge.
The defendant, Dexter O'Neal Arvie, was convicted on one count of aggravated kidnapping, a violation of La.R.S. 14:44, and three counts of armed robbery, violations of La. R.S. 14:64. He now appeals both the convictions and sentences. For the following reasons, we affirm.

DISCUSSION OF THE RECORD
The State alleges that the defendant in this matter, Dexter O'Neal Arvie, held an elderly man living in Mamou, Louisiana, Alton Clark, captive during a two-day period, August 34, 1995. During this period of captivity, which resulted in a kidnapping charge, the defendant allegedly forcefully took money from Clark on three occasions. As a result of these takings, the defendant was also charged with three counts of armed robbery.
The State maintains that the defendant was aided in the events of the two-day period by Virginia Poullard, his ex-wife. Poullard, who testified that she lived with Clark and was pregnant with his child at the time of the events, contends that the defendant forced her to assist in the alleged crimes. She testified that the two-day period of captivity came to an end on August 4th when the three drove to Sherburne Reserve in St. Martin Parish. She further testified that the defendant taped Clark's face and body and threw him into a body of water. At the time of trial, Clark's whereabouts were unknown.
On November 17, 1995, the defendant was charged by grand jury indictment with one count of aggravated kidnapping, a violation of La.R.S. 14:44, and two counts of armed robbery, violations of La.R.S. 14:64. He was subsequently arraigned and pled not guilty to *812 all charges. Although jury selection began on April 1, 1996, the proceedings on that day resulted in the trial court's granting of a mistrial.
On April 15, 1996, the defendant was re-charged by grand jury indictment with one count of aggravated kidnapping, a violation of La.R.S. 14:44, and three counts of armed robbery, violations of La.R.S. 14:64. He was arraigned for a second time and pled not guilty to the charges.[1] Following a jury trial on March 10, 11, and 12, 1997, the defendant was found guilty as charged on all four counts. On June 6, 1997, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the one count of aggravated kidnapping, and fifty years at hard labor without benefit of probation, parole, or suspension of sentence on each of the three counts of armed robbery, for a total of 150 years, each to be served consecutively to the life sentence.
On the day of the sentencing hearing, the defendant filed a Motion for an Appeal, which was granted that day, and a Motion for a New Trial, which was set for hearing on July 11, 1997. The defendant also made an oral Motion to Reconsider Sentence, which was denied by the trial court during the hearing. Subsequently, on June 17, 1997, the defendant filed a written Motion to Reconsider Sentence, which was set for hearing on July 11, 1997. On that date, arguments were heard with respect to the Motion for a New Trial, and the trial court denied the motion. However, the Motion to Reconsider Sentence was not discussed during the hearing. The defendant now appeals his convictions and sentences assigning the following as error:
1. The trial court erred in admitting evidence of highly prejudicial "other crimes."
2. The trial court erred in admitting prior consistent statements of Virginia Poullard in evidence and publishing same to the jury.[2]
3. The convictions herein were based on the unreliable testimony of Virginia Poullard; therefore, the verdicts fail to meet the legal standard for sufficiency of the evidence.
4. The sentences imposed herein are excessive for the following reasons:
a. The trial court failed to consider mitigating circumstances;
b. The trial court erred in imposing consecutive sentences.
5. The trial court erred in denying defense motion for mistrial based on improper closing argument.

LAW

Sufficiency of the Evidence
By this assignment, the defendant contends that the evidence adduced at trial was insufficient to support his convictions. He does not attempt to dispute the existence of any of the elements of either crime of which he was convicted, rather, he claims the verdicts were erroneous because they were based primarily on the unreliable testimony of Virginia Poullard. Although physical and other testimonial evidence was introduced to corroborate Poullard's allegations, it was her testimony that established the crimes were committed and linked the defendant to the crimes. Additionally, the defendant maintains that one of the armed robbery convictions, based on the cashing of one of Clark's checks at a bank's drive-through window, is unsubstantiated as the bank teller who cashed the check testified that only Clark and Poullard were in the vehicle on that date.
The defendant was convicted of one count of aggravated kidnapping and three counts of armed robbery. La.R.S. 14:44 defines the crime of aggravated kidnapping as follows:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other *813 person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
As for an armed robbery conviction, the State must prove the elements contained within La.R.S. 14:64(A). The statute provides as follows:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
At trial, the events surrounding the alleged crimes were developed almost exclusively through Poullard's testimony. She testified that, in the early morning hours of August 3, 1995, she and the defendant, her ex-husband, went to the home of Alton Clark, an elderly man, who resided in Mamou, Louisiana. Poullard testified she was Clark's companion and had been living with him for more than eight months. She further stated that she was seven months pregnant with Clark's child at the time of the alleged offenses.
Poullard testified that, before arriving at Clark's house, she had been at a night club in Ville Platte where she got "high" and that she had gotten a ride to Mamou with a man named Hurly Tezeno. During the drive to Mamou, Poullard and Tezeno encountered the defendant walking along the road and gave him a ride. Sergeant Adam Fruge of the Mamou Police Department testified that he stopped Tezeno's vehicle for traffic violations at approximately 3:30 a.m. on August 3rd. He confirmed that Poullard and the defendant were both passengers in the vehicle. Poullard testified that after the traffic stop she and the defendant walked to Clark's residence, knocked on the door, and were allowed into the house by him.
Poullard testified that she asked Clark to drive the defendant home and that the men left, but that they returned to the residence at approximately 6:30 to 7:00 a.m. She stated that she and the defendant smoked crack cocaine, which the defendant had in his possession upon the men's return. She further stated that, although Clark did not participate in the drug use on this occasion, she had seen him use cocaine and marijuana on previous occasions.
Poullard testified that, on the third of each month, Clark's Veteran's Administration check was automatically deposited into his bank account and that, knowing this, the defendant asked Clark for money. She stated that, after Clark refused the request, the defendant became violent, struck Clark, armed himself with Clark's rifle, and began demanding money. Poullard testified that she and the defendant proceeded to tie Clark's feet and hands with cut electrical cords. She alleged that the defendant forced her to assist him at gunpoint. Poullard testified that she then retrieved cash from Clark's wallet and left to purchase some drugs, as she was directed to do by the defendant.
Poullard testified that, when she returned, Clark was untied and sitting in a chair talking to the defendant. The defendant then took the cocaine from Poullard and used it. She stated that Clark then told her to retrieve two of his blank personal checks, one of which he signed and filled out for $200.00. He then gave it to Poullard for completion. Poullard alleges that this practice was repeated on August 4th when Clark signed a $500.00 check. Twice, Poullard drove Mr. Clark through the drive-through window of his local bank where he cashed the $200 check on August 3rd and the $500 check on August 4th. According to Poullard, Clark signed the checks so that the defendant would not harm him.
Poullard testified that the defendant accompanied her and Clark during both trips to the bank and that he was armed with a knife on both occasions. However, the attending bank teller testified at trial that during the first trip, Poullard and Clark were alone in the vehicle, although during the second trip *814 they were accompanied by a black male (whom she could not identify) sitting in the back seat. When asked if the defendant threatened them with the knife, Poullard stated that: "Before we left he told us not to do anything stupid because he would use the knife."
After leaving the bank on August 3rd, the defendant allegedly asked Clark if he and Poullard could drive him to Oakdale to purchase some more drugs. Poullard testified that Clark replied, "Just do what you want. Just don't hurt me." Thereafter, Poullard drove the group to Oakdale where the defendant allegedly purchased $100 worth of drugs.
On the night of August 3rd, the three rented a motel room in DeRidder. Poullard stated that, during the night, the defendant left her and Clark alone in the motel room on at least two separate occasions to purchase more drugs. However, Poullard and Clark did not attempt to flee. Poullard stated that Clark told her earlier that night to not "do anything or say anything to alarm Dexter" and to do as the defendant said.
On the morning of August 4, 1995, according to Poullard's testimony, she left the men to purchase gasoline and breakfast. Thereafter, the three drove to the bank in Mamou to cash the $500.00 check, as previously discussed. Poullard testified that, upon leaving the bank, Clark attempted to exit the vehicle; however, he was grabbed by the defendant who told him that "he would cut his throat off if he would do it again." The defendant then ordered Poullard to lock the doors to the vehicle.
After leaving the bank, the defendant instructed Poullard to drive in the direction of Opelousas and eventually to turn onto Highway 190. She stated that, at that point, she believed the defendant was going to kill both her and Clark. During the drive, Mr. Clark allegedly asked the defendant, "what are you going to do to me?" According to Poullard's testimony, the defendant did not reply, but only laughed. The defendant directed Poullard to a destination in Sherburne Reserve located in St. Martin Parish. Upon exiting the vehicle, the defendant opened the passenger door, struck Clark in the face, and forced him from the vehicle. According to Poullard, the defendant removed Mr. Clark's dentures from his mouth "because that would be evidence of his body being found," taped Clark's head, mouth, nose, and feet, and threw him in a nearby body of water. She stated that she protested, but to no avail. She testified that the defendant threw a pair of scissors in the water and later discarded a bag containing other articles in a garbage container in Opelousas.
After leaving the reserve, Poullard and the defendant drove around the surrounding area, and on August 5th, drove to Mamou to return Clark's car to his residence. She stated that she and the defendant left Clark's residence on foot and received a ride from Warren Doucet who was traveling through Mamou in his vehicle. Doucet confirmed at trial that he had, indeed given them a ride on the morning of August 5th.
Poullard testified that the defendant threatened to kill her parents and children if she told anyone of the events involving Alton Clark. Finally, Poullard stated that she had not seen Clark since the events of August 4, 1995.
In brief, the defendant attacks Poullard's credibility. She admitted to crack cocaine use and that she had occasionally exchanged sex for drugs. She was also a convicted felon, and had undergone a probation revocation hearing one week prior to the present trial as a result of testing positive for cocaine.
The defendant also points to the conflict between the testimony of the attending bank teller and that of Poullard. The teller stated that Poullard and Clark were alone in the vehicle during the August 3rd trip through the bank's drive-through window. However, Poullard stated that the defendant, while armed with a knife, accompanied her and Mr. Clark during both trips to the bank.
In State v. Hongo, 625 So.2d 610, 616 (La.App. 3 Cir.1993), writ denied, 93-2774 (La.1/13/94); 631 So.2d 1163, this court stated the following:
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 *815 (La.App. 1 Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984). The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Tompkins, 403 So.2d 644 (La.1981), appeal after remand, 429 So.2d 1385 (La.1982). Thus, in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion. State v. Owens, 606 So.2d 876 (La.App. 2 Cir.1992).
See also State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309.
In short, issues of credibility rest with the trier of fact. Apparently, the jury did believe Poullard's account of the events and circumstances surrounding the crimes. Furthermore, Poullard's testimony was corroborated by other evidence. The bank teller who cashed the checks testified that Poullard and Clark came to the bank twice to cash checks and that, on one of these visits, a third man was in the vehicle with them. Additionally, the checks themselves, one for $200.00 and one for $500.00, were also entered into evidence. Testimony of police officers established that fingerprints matching Poullard's and those of the defendant were taken from Clark's residence. This testimony also indicated that cut electrical cords, drug paraphernalia, and blood stains were also found in the house, all of which support Poullard's account of the events. Further, blood stains were found on the headrest of the passenger seat of Clark's car. Finally, physical evidence, such as boots similar to those worn by Clark and scissors, were found by police officials at the location in Sherburne Reserve where Poullard alleged that the defendant threw Clark into the body of water.
Given Poullard's testimony and the corroborating evidence, we conclude that the record contains sufficient evidence to support the defendant's convictions.

Closing Arguments
By this assignment, the defendant contends that the trial court erred in denying defense counsel's motion for a mistrial based on improper statements made by the State during its closing argument. The defendant argues that the State repeatedly made improper references to the defendant's failure to testify at trial, and thus, a mistrial should have been granted pursuant to La.Code Crim.P. art. 770(3).
Article 770 of the Louisiana Code of Criminal Procedure provides, in part, as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
....
(3) The failure of the defendant to testify in his own defense; ...
In State v. Bourque, 622 So.2d 198, 240 (La.1993),[3] the Louisiana Supreme Court stated:
A defendant relies on the Fifth and Fourteenth Amendments to the U.S. Constitution to protect his right against self-incrimination by forbidding the prosecution to comment on the defendant's failure to take the stand. See [State v.] Lee, 559 So.2d [1310] at 1320 [(La.1990)]. In addition to this federal protection, state law provides for a mandatory declaration of mistrial if the prosecutor refers directly or indirectly to the failure of the defendant to testify in his own defense. La.C.Cr.P. art. 770(3). The purpose behind the rule "is to prevent attention from being drawn to the fact that the defendant has not testified in his own behalf," and to prevent the jury from drawing unfavorable inferences from the fact. State v. Fullilove, 389 So.2d 1282, 1284 (La.1980).

*816 Under the statutory rule, where the prosecutor makes a direct reference to a defendant's failure to take the stand, a mistrial must be declared. In that event, the Court will not attempt to determine what effect the statement had on the jury. State v. Johnson, 541 So.2d 818, 822 (La. 1989); Fullilove, 389 So.2d at 1284.
Where the prosecution makes a reference to a defendant's failure to take the stand which is indirect, this Court tries to determine the remark's intended effect on the jury, "to distinguish indirect references to the defendant's failure to testify (which are impermissible) from general statements that the prosecution's case is unrebutted (which are permissible)." Johnson, 541 So.2d at 822; Fullilove, 389 So.2d at 1284. "A statement that the state's evidence is uncontradicted is not necessarily a prohibited comment on defendant's failure to testify." State v. Jackson, 454 So.2d 116, 118 (La.1984).
In order to determine the prosecutor's intent, this Court has held "in cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, we have held that the prosecutor's argument did not constitute an indirect reference to the defendant's failure to take the stand." Johnson, 541 So.2d at 822 (emphasis in original). "On the other hand, where the defendant is the only witness who could have rebutted the state's evidence, `a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify' and mandates a mistrial." Id., (citation omitted).
In State v. Watts, 596 So.2d 306, 309 (La. App. 3 Cir.), writ denied, 599 So.2d 316 (La.1992), the State in closing argument made the following comments: "`Now let's turn to the defense case. There is no case. The State's case stands uncontradicted, uncontroverted.' " The defendant argued that he was the only person who could have testified in order to controvert the State's evidence and, thus, any such remark was a reference to his failure to take the stand. The State maintained that there were other people present at the commission of the crime who could have refuted their testimony. Citing State v. Jackson, 454 So.2d 116 (La.1984), and State v. Porter, 547 So.2d 736 (La.App. 3 Cir.1989), this court held that "an indirect reference to a defendant's failure to testify does not constitute reversible error unless the prosecutor intended to emphasize the defendant's failure to testify." Watts at 309. The court also concluded that "the prosecutor ... simply referred to a lack of evidence to refute or contradict that presented by the State." Id. See also State v. Sergon, 539 So.2d 1275 (La.App. 3 Cir.1989).
The defendant in the present case contends that the State made improper references to the defendant's failure to testify. The prosecutor made the following statements during closing argument:
The way you apply it is you listen to what the Judge is going to tell you in his instructions. He is going to tell you what law to apply, and where do you apply that law? You apply that law to what came from right here. What came from the witness stand and nothing else. You apply what is there. What you heard, what evidence, what pieces of evidence were brought in ... You have to take what you heard with no other information, with what you heard from the witness stand is what you are going to base your decision on.
....
... The State has to prove to you beyond a reasonable doubt that these crimes were committed by Mr. Arvie ... We submit to you that we've done that. There is no reasonable explanation as to what happened. There is nothing that came from this witness stand to contradict any other explanation that Mr. Arvie was guilty of these charges.
That's where we're at today. That is the decision you're going to have to make. It can only come from the witness stand.
The defense wants you not to believe anything that came from the witness stand at all. That this is all a fabrication that none of this happened. Because why Miss Virginia Poullard is a crack head. That is their total defense. That Miss *817 Virginia Poullard is a crack head and that she is unbelievable.... We submit to you that she told the truth. She told you what happened ...
....
... We're talking about it all coming from the witness stand folks with no contradictions. Nothing. Nothing has been contradicted. You cannot have anything other than him being there. Nothing was presented other than Dexter Arvie was there during all those situations.
He's still there. He was there. They haven't taken him down and put him someplace else. The witnesses haven't put him someplace else[.] Testimony hasn't put him someplace else. He's still there and he's still in charge.
....
They don't want you to believe Virginia because she is a crack head. Uncontradicted testimony from that witness stand will show you if Virginia is a crack head, he's a crack head ...
... But what about the statement that Dexter gave. Let's talk about the statement that Dexter gave. Let's talk about the statement that Dexter gave Moody....[4]
At this point in the State's argument, defense counsel objected on the basis that the prosecutor was referring to evidence not in the record. Counsel also made a motion for a mistrial based on the State's allegedly improper references to the defendant's failure to testify. The motion was denied by the trial court without reasons. Thereafter, the State continued its closing argument and made the following remarks:
... Ya'll are left with the evidence that came from the witness stand and nothing else.
We didn't play hide the ball with ya'll... We showed ya'll how we did everything we could to confirm and corroborate [Poullard's] statements....
In brief, the defendant contends he was the only witness who could have refuted Virginia Poullard's testimony, as Poullard testified that only she, Clark, and the defendant were present during commission of the crimes, and thus, the State's comments regarding her uncontradicted testimony improperly directed the jury's attention to the defendant's failure to testify. We do not agree.
Our review of the State's complete closing argument reveals that no direct reference was made to the defendant's refusal to testify. Further, any inference of such that can be gleaned from the argument, if any, is only an indirect reference. According to the supreme court's decision in Bourque, 622 So.2d 198, after an indirect reference to the defendant's failure to testify is made, a court must attempt to determine the intended effect on the jury. Id. As previously stated, general statements regarding the State's unrebutted case are permissible. Id. However, the supreme court noted in Bourque that if the defendant is the only person who could possibly rebut the State's case, that a mistrial is required. Id. We do not find that to be so in the instant matter. While true that Poullard's testimony indicated that she, the defendant, and Clark were alone during the course of the events, we do not conclude that the defendant is the only witness who could possibly have countered her version of the events. In fact, most of the witnesses presented corroborated Poullard's version of events. The other witness could have contradicted her testimony rather than supporting her assertions. We also note that the defendant was aided by the testimony of the bank teller, as to one part of her testimony, *818 who stated that the defendant was not in the car with Poullard and Clark when the $200.00 check was cashed.
We find that the State's comments were directed to the weight of their entire case and the corroboration of Poullard's testimony. We do not find these comments indicate the State's intent to refer to the defendant's failure to testify. Accordingly, we find no error.

Other Crimes Evidence
By this assignment, the defendant argues that the trial court erred by admitting highly prejudicial other crimes evidence. Specifically, the defendant refers to the evidence of events alleged to have occurred in St. Martin Parish; specifically, the allegation that the defendant taped the victim's face and body and threw him into a body of water. The defendant argues that such evidence was not necessary to prove the charged offenses of aggravated kidnapping and armed robbery or to accurately present the State's case and that the evidence was highly prejudicial.
Although evidence of other crimes, wrongs, or acts committed by a defendant is generally inadmissible, La. Code Evid. art. 404(B)(1) provides that evidence of other acts is admissible when "it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." This provision is the codification of the principle of res gestae. "Evidence admissible under the res gestae exception to the general inadmissibility of other crimes evidence is not subject to any notice requirements." State v. Velez, 588 So.2d 116, 128 (La.App. 3 Cir.1991), writ denied, 592 So.2d 408 (La.1992), certiorari denied, 505 U.S. 1220, 112 S.Ct. 3031, 120 L.Ed.2d 901 (1992) citing State v. Prieur, 277 So.2d 126 (La.1973).
In State v. Coates, 27,287 (La.App. 2 Cir. 9/27/95); 661 So.2d 571, writ denied, 95-2613 (La.2/28/96); 668 So.2d 365, the defendant and his accomplices brutally beat and kidnapped the victim in one parish, and drove to another parish where he was beaten again and eventually killed. Evidence of the death was introduced during the defendant's trial for kidnapping. Citing La. Code Evid. art. 404(B)(1), the second circuit held the evidence of the victim's death was admissible as the events constituted one continuing transaction, and the events involving the homicide and the kidnapping occurred in close time and proximity with one another. We conclude that the evidence of the possible killing of Clark in St. Martin Parish was admissible under La. Code Evid. art. 404(B)(1). The kidnapping of Clark, a charged offense, was a continuing event which ended in St. Martin Parish. The State would have had difficulty in fully presenting its case without reference to the events alleged to have taken place in St. Martin Parish.
In brief, the State cites State v. Jackson, 450 So.2d 621 (La.1984), for the proposition that res gestae evidence is not subject to the general La.Code Evid. art. 403 balancing test. However, Jackson was decided under former La.R.S. 15:447 before the enactment of the Evidence Code and Article 404(B)(1). The current jurisprudence holds that under Article 404(B)(1) "[i]t is no longer true that whatever forms part of the res gestae is admissible, and such evidence remains subject to the balancing test of La. Code Evid. Ann. art. 403 (West 1994)." State v. Smith, 94-1502, p. 6 (La.App. 4 Cir. 1/19/95); 649 So.2d 1078, 1083, citing Authors' Note to Article 404(B), Handbook on Louisiana Evidence Law, Pugh, Force, Rault, and Triche (1994 ed.). See also, State v. McGuire, 577 So.2d 1120 (La.App. 1 Cir.), writ denied, 581 So.2d 704 (La.1991). Therefore, the evidence at issue which constituted part of the res gestae of a charged offense is subject to the balancing test of La.Code Evid. art. 403. Nevertheless, the evidence of the events which transpired in St. Martin Parish was highly relevant to the charged crime of aggravated kidnapping. We conclude that the probative value of the evidence outweighed any prejudicial effect.

Sentencing Errors
By this assignment, the defendant contends the trial court erred in sentencing him. The defendant was sentenced to serve life imprisonment at hard labor without benefit *819 of probation, parole, or suspension of sentence on the one count of aggravated kidnapping, the mandatory penalty for the crime. See La.R.S. 14:44. He was sentenced to serve fifty years at hard labor without benefit of probation, parole, or suspension of sentence on each of the three counts of armed robbery, for a total of 150 years, each to be served consecutively to the life sentence. The penalty range for armed robbery is five to ninety-nine years, without benefit of probation, parole, or suspension of sentence. See La.R.S. 14:64(B).[5]
The defendant first maintains that the trial court did not comply with La.Code Crim.P. art. 894.1 by failing to consider any mitigating factors. The defendant does not list any mitigating factors in his memorandum, nor did he attempt to present any mitigating evidence at his sentencing hearing.
Testimony at trial indicated that the defendant was a drug addict and was under the influence of crack cocaine when the crimes were committed. Although the trial court did not note this point at sentencing, the court thoroughly articulated its reasons for sentencing and the many aggravating factors which the court considered relevant. The trial court recognized the defendant's past criminal history, two felonies and ten misdemeanors during the previous eight-year period, with convictions for crimes such as shoplifting and burglary. The trial court observed the violent nature of the crimes now under review, which it deemed "vicious, brutal, and savage," and the defendant's apparent lack of remorse at trial. The court recognized the harm to the victim's family and noted that Clark had not been seen since the time of the crimes. In the opinion of the trial court, a strict sentence was required to prevent the defendant from committing future crimes. Given this articulation, we conclude that the trial court sufficiently complied with Article 894.1.
Next, the defendant asserts that the imposition of consecutive sentences was improper.
Due to the consecutiveness of his sentences, the defendant will serve a mandatory life sentence plus one hundred fifty years. If a defendant is "convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." La.Code Crim.P. art. 883. As the present crimes were based on a common scheme or plan, concurrent sentences would have normally been imposed. However, it is within the discretion of the trial court to impose consecutive sentences.
The trial court did not specifically state its reasons for imposing consecutive sentences. However, the court in general terms stated its intent to impose strict sentences commensurate with the violent nature of the present crimes and to ensure the defendant did not commit future crimes. As previously discussed, the court thoroughly articulated the aggravating factors present in this case. We further note that the fifty year sentences imposed for each of the armed robbery convictions is a mid-range sentence, considering that, theoretically, the defendant could have been sentenced to three separate ninety-nine year sentences. Accordingly, we do not find that the trial court abused its discretion.

*820 DECREE
For the foregoing reasons, the convictions and sentences of the defendant, Dexter O'Neal Arvie, are affirmed.
AFFIRMED.
NOTES
[1] Although the defendant was re-charged with one count of aggravated kidnapping and three counts of armed robbery, the minutes of the second arraignment indicate the Defendant pled not guilty to the one count of aggravated kidnapping and two counts of armed robbery.
[2] This assignment is not briefed by counsel and is, therefore, abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.
[3] We note that Bourque has recently been overruled by the supreme court in State v. Comeaux, 93-2729 (La.7/1/97); 699 So.2d 16. However, the case was overruled on different grounds. Comeaux did not discuss comments regarding a defendant's failure to testify, the proposition for which we refer to Bourque.
[4] The record reveals that "Moody" is Officer Kent Moody of the Mamou Police Department and that he took the initial report of Clark's disappearance and performed much of the investigation of the crimes. The State apparently referred, in this excerpt from the closing argument, to a statement taken from the defendant which, upon review of the transcript, was not discussed during Moody's testimony. Following the reference, the defense immediately objected and the court listened, out of the presence of the jury, to Moody's testimony on tape. After it was apparently revealed that this statement had not been referred to, the closing argument resumed without further reference to the statement. However, the contention of the defendant on appeal deals not with this reference, but, rather, that the prosecutor's remarks indirectly, but improperly, referred to the defendant's failure to testify at trial.
[5] On the day of his sentencing hearing, the defendant made an oral Motion to Reconsider Sentence which was denied by the trial court during the hearing. However, the defendant later filed a written Motion to Reconsider Sentence. Although the written motion was set for hearing, the record does not indicate that the motion was ever ruled upon by the trial court. La.Code Crim.P. art. 881.1 requires that a defendant make a motion for reconsideration of sentence. This motion can be made orally, at the time of sentencing or in writing thereafter. Failure to make such a motion, of course, precludes future review of this sentence. Id. In State v. Maloney, 625 So.2d 748 (La.App. 1 Cir.1993), the first circuit concluded that it was the defendant's duty to not only make such a motion, but to obtain a ruling on the motion and supplement the record with that ruling. Since the motion had not been ruled upon, the first circuit remanded the case for supplementation of the record or ruling on the motion. We do not find that the instant matter is analogous. Although the record does not evidence that the written Motion to Reconsider sentence was ever ruled upon, there is the prior, denied oral motion upon which we can now rely. Accordingly, we will review the merits of the defendant's assignment.