491 So.2d 174 (1986)
STATE of Louisiana
v.
Robert NEWMAN.
No. CR85-1154.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
*175 Alvin B. King, Lake Charles, for defendant-appellant.
Marvin Olinde, Asst. Atty. Gen., Baton Rouge, Richard P. Ieyoub, Dist. Atty., Lake Charles, for plaintiff-appellee.
Before GUIDRY, DOUCET and MANSOUR,[*] JJ.
GUIDRY, Judge.
The defendant, Robert Newman, was arrested on March 29, 1984 and charged with armed robbery, a violation of La.R.S. 14:64. Defendant was arraigned on May 21, 1984, entered a plea of not guilty, and elected trial by jury. The district attorney's request for recusal from prosecuting this case was granted and the case was referred to the Louisiana State Attorney General's office.
The jury was selected from a list of 90 Petit Jurors. The Clerk of Court produced a box labeled as "Petit Jury" which contained a sealed envelope containing the names of 90 Petit Jurors. Under direct supervision of the court, 37 Petit Juror's names were randomly drawn from the "Jury Box". The State peremptorily challenged eight jurors, defendant peremptorily challenged five jurors and one for cause. At the request of the defendant, the court noted that all remaining members of the Jury Venire were of the white race and that there were no minority groups represented on the jury.
Following the denial of two motions for mistrial, the trial proceeded. Defendant was found guilty as charged by a jury of twelve. Defendant's motion for a pre-sentence investigation was denied but the court ordered the State to provide a criminal history of defendant and defense counsel to provide any information available on defendant's background. On October 15, 1985, the trial court sentenced defendant to serve twelve (12) years in a state penal institution, without benefit of parole, probation, or suspension of sentence.

FACTS
On March 29, 1984, Shirley Roberts, while working as a cashier at Peggy's Superette, was robbed at gunpoint. Mrs. Roberts was working the register when defendant entered the store. The defendant walked up to the register, pointed a gun at Mrs. Roberts, and demanded she give him all the money in the register. The defendant told her he would not hurt her if she cooperated. After Mrs. Roberts placed the money in a paper bag, defendant ran out of the store. Mrs. Roberts yelled to the owner of the store, Mr. Sonnier, that they had been robbed. Sonnier looked toward the front of the store and observed a black male, dressed in a green jumpsuit and purple hat, running out of the store.
Sonnier chased defendant on foot for a short distance, then returned to the store and got into his car. He drove down about two blocks to a place known as the Reno Club where he observed a black male walking out from around the side of the building. When Sonnier inquired as to whether anyone had seen a black man wearing a purple cap come by there, an unidentified black male advised him that such a man had run down the street. Sonnier observed that this man was not wearing a shirt and seemed to be out of breath and sweating. Sonnier returned to his store where he met police officers who had arrived on the scene. He and the officers then proceeded to the Reno Club and observed the defendant getting into a car and leaving the scene. The money was recovered from the side of the building. Sonnier identified defendant as the man he had spoken to earlier *176 and Mrs. Roberts subsequently identified him as the robber.
Defendant was then arrested and charged with armed robbery, a violation of La.R.S. 14:64. As aforestated, he was tried and convicted by a jury of twelve persons. Defendant appeals his conviction urging four assignments of error.

ASSIGNMENT OF ERROR NO. 1
Through this assignment of error the defendant asserts that the trial court erred in denying defendant's motion for a mistrial pursuant to La.C.Cr.P. art. 775(3), as all black veniremen were removed from the jury venire by the State's use of peremptory challenges. Defendant argues that this defect in the proceedings constitutes the denial of trial by a fair and impartial jury as defendant is a black man.
In the recent United States Supreme Court case of Batson v. Kentucky, ___ U.S. ___, ___, ___, 106 S.Ct. 1712, 1715-16, 1722-24, 90 L.Ed.2d 69 (1986), Justice Powell stated for a majority of the Court:
"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure....
... [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, [430 U.S. 482] at 494, [97 S.Ct. 1272 at 1280, 51 L.Ed.2d 498 (1977)] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' Avery v. Georgia, supra, [345 U.S. 559] at 562 [73 S.Ct. 891, at 892, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination....
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... [T]he prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumptionor his intuitive judgmentthat they would be partial to the defendant because of their shared race. Cf. Norris v. Alabama, 294 U.S., [587] at 598-599[, 55 S.Ct. 579, 583-84, 79 L.Ed. 1074 (1935)]; see Thompson v. United States, 469 U.S. 2024,[105 S.Ct. 443, 444, 83 L.Ed.2d 369 (1984) ] (BRENNAN, J., dissenting from denial of certiorari).... Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `affirming his good faith in individual selections.' Alexander v. Louisiana, 405 U.S. [625] at 632 [92 S.Ct. 1221, at 1226, 31 L.Ed.2d 536 (1972)]."[1]
In the instant case the defendant has clearly satisfied the first and second *177 criteria set forth in Batson for the establishment of a prima facie case of purposeful racial discrimination. The defendant is a black man and the State did exercise peremptory challenges to remove from the venire members of the defendant's race. However, in order to establish a prima facie showing, the defendant must demonstrate from these facts and other relevant circumstances a reasonable inference that the prosecutor exercised peremptory challenges in order to exclude veniremen from the petit jury on account of their race. In our view, the defendant has utterly failed in establishing this last and most important criteria. There is no showing that members of the defendant's race were underrepresented on the venire from which his jury was drawn or that the venire was selected under a practice providing the opportunity for discrimination. Quite to the contrary, the record reflects that the jury venire was summoned by means of a newly installed computer system containing approximately 160,000 names, representing all registered voters and holders of driver's licenses in the Parish of Calcasieu, Louisiana. The computer is programmed to make a random selection of that number of jurors as ordered by the court.
Further, defendant refers to no other "relevant circumstances" which would support an inference that the prosecutor purposefully excluded veniremen from the petit jury on account of their race. In stark contrast to this total lack of other relevant circumstances supporting an inference of racial discrimination in jury selection is the prosecutor's explanation of her use of peremptory challenges. In this connection, she stated:
"Each one of the peremptory challenges that I exercised, I do have written down on my sheet of paper a particular reason as to, not as to race, but as to answers to questions that I posed to the potential jurors that made me make my selection, and there was no systematic basis by which I excluded anyone and it was strictly on the questions to the answers [sic] that I posed to them and I exercised the challenges that are given to me under the Code of Criminal Procedure."
The trial court, in denying defendant's motion for a mistrial, concluded that the State's use of peremptory challenges was exercised logically and for adequate reasons totally unrelated to race. We find the trial court's determination in this regard to be fully supported by the record.
In any event, our Louisiana Supreme Court, in its denial of a rehearing application in State of Louisiana v. Glenn Ford, 489 So.2d 1250 (La.1986), concluded that the decision in Batson was not to be applied retroactively, i.e., to cases tried before it was handed down. The United States Fifth Circuit Court of Appeal in Esquivel v. McCotter, 791 F.2d 350 (5th Cir.1986), reached the same conclusion.
For the reasons stated, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant argues through this assignment of error that the trial court erred in denying his motion for mistrial pursuant to La.C.Cr.P. art. 767,[2] as the State during its opening statement, improperly alluded to an inculpatory statement made by defendant. During the opening statement, the prosecutor remarked:
"... you will hear Mr. Sonnier testify that as he drove off to the Reno Lounge he saw three black males standing on the side and a fourth male coming from behind this building toward the three men that were standing on the side. He asked the men standing there, have you seen a person wearing green clothes, purple hat running in this direction". There is a man there, no shirt on with black pants with a large scar on his belly that tells Mr. Sonnier at that time, "yea, he went down the street". You will find out that that man was the defendant ... as the men walk around the side of the *178 corner he notices this man, who does not have a shirt on with the large scar down his belly, drops a brown paper bag on the side of the building in between a railing. He watches him go inside the store; sorry, into the lounge. He goes, he looks in the bag, and in the bag is money. So he picks up the bag and goes back to the store. You are going to hear testimony from one of the gentlemen who was standing outside that building, the Reno Lounge, that day, and he is going to tell you what he observed as Mr. Sonnier drove up; that he observed a black male dressed in a green jumpsuit and a hat run to the back of the Reno Lounge, he is going to be able to tell you that that person was the defendant. He is also going to tell you a conversation that the two of them had after Mr. Sonnier had drove up. He is going to tell you that he saw the defendant with the brown paper bag that looked lumpy, like it had socks in it. He is going to tell you that the defendant wanted to know if he could borrow his shirt. He also wanted to know if there was a back door."
Defendant complains of the prosecutor's reference to the statement made by defendant to Sonnier, i.e., "yea, he went down the street". Defendant argues that, taking the prosecutor's statement as a whole, this remark by defendant can be construed as an inculpatory statement. While the remark may, when taken with additional testimony surrounding this encounter, be damaging to defendant, it cannot be considered an inculpatory remark.
In State v. Bodley, 394 So.2d 584 (La. 1981), the defendant complained of reference by the prosecutor during his opening statement to defendant's remark to the victim's mother over the telephone to the effect that the victim was "not at home, she had gone to the laundromat". In fact, the victim was already dead. The court reasoned that these statements were not damaging until coupled with the coroner's opinion that the victim was already dead at the time the statements were made. The Supreme Court held:
"... This contention is grounded in the mistaken assumption that defendant's statements, since damaging at trial, are necessarily inculpatory in character. Such is not the case. As used in art. 768, the term `inculpatory statement' refers to an out-of-court admission of incriminating facts made by the defendant after the crime has been committed. State v. Berain, 360 So.2d 822 (La.1978); State v. Labostrie, 358 So.2d 1243 (La.1978); State v. Brent, 347 So.2d 1112 (La.1977). An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt may be inferred." (citations omitted). State v. Bodley, supra, at 589.
See also State v. Michel, 422 So.2d 1115 (La.1982) and State v. Seymour, 449 So.2d 1189 (La.App. 2d Cir.1984).
The court in Seymour, faced with a situation much like Bodley and the present case, again reasoned that a statement is not inculpatory merely because it may be damaging at trial. In Seymour, supra, the defendant, after shooting his wife and requesting that Mrs. Elizabeth Seymour and her husband take him to the police, asked, "... that the Bedgoods not have his kids". Seymour, supra, at 1192. The court reasoned that the statement, though potentially damaging at trial, was not inculpatory and therefore not subject to the notice requirements of La.C.Cr.P. art. 767, nor was it improper for the prosecutor to refer to such remark during the opening statement.
Likewise, in the case sub judice, the defendant's remark to Sonnier cannot be considered inculpatory. It does not admit any facts which tend to establish his guilt, nor may defendant's guilt be inferred from this remark. If defendant's statement to Sonnier is damaging to any degree, it is only so when coupled with additional testimony and with a view toward the totality of the circumstances. Even so viewed, however, the statement is not of an inculpatory nature.
For the reasons stated, this assignment is without merit.

*179 ASSIGNMENT OF ERROR NO. 3
Through this assignment defendant argues that the trial court erred in denying defendant's motion for a mistrial pursuant to La.C.Cr.P. art. 770(3),[3] as the state, during closing arguments, made reference to the defendant's failure to testify. The remark complained of is contained in the following exerpt of the prosecutor's closing argument:
"... You heard the testimony of Shirley Roberts, and keep in mind she is the only person who could tell you what really happenedshe and the defendant. Shirley Roberts was working at her job as a cashier, Peggy's Superette, on the afternoon of March 29, 1984 when she was robbed. She was standing there. She had waited on someone, she looked up, and saw a gun pointed at her.Now, Shirley is the only person who was able to see the defendant. There is no doubt in her mind that Robert Newman is the man who robbed her...." (Emphasis ours).
Defendant complains that the reference to "she and the defendant" being the only ones who could tell what happened amounts to a direct comment on defendant's failure to testify in his own behalf. Thus, the defendant argues, the comment draws the jury's attention to defendant's failure to testify or to present evidence in his behalf. Defendant relies on State v. Perkins, 374 So.2d 1234 (La.1979). In Perkins, the court found the prosecutor's reference to testimony as uncontroverted, impermissible when the defendant was the only person who could dispute the testimony given. Thus, such a reference would clearly focus the jury's attention on the defendant's failure to testify. Perkins, supra. But, here, the remark was little more than an aside. The prosecutor was merely demonstrating that Shirley is the only witness who can identify defendant as the robber, identify him as the man who held her at gunpoint and demanded the money. The prosecutor merely remarked that of course the only other person who could say what happened would be the defendant himself. The prosecutor did not following that remark with anything that casts dispersions on defendant's failure to testify.
"In Smith [State v. Smith, 327 So.2d 355 (La.1976) on rehearing] the prosecution in argument stated that the only man who knew what went on in the room, which was the site of the robbery and killing was the man who walked out of the room with the gun. In discussing the requisites in order to mandate a mistrial when an indirect reference to the defendant's failure to testify is involved, we stated:
`In order to mandate a mistrial we have said that the inference must be plain that the remark was intended to bring to the jury's attention the failure of the defendant to testify.' (citations omitted) 327 So.2d at 362. See also State v. Stephenson, 412 So.2d 553 (La.1982). Thus we held that in the context of the district attorney's entire argument, the statements were not intended to call the jury's attention to defendant's failure to take the stand." State v. Burkhalter, 428 So.2d 449 (La.1983).
Thus it is clear under the current and prevailing jurisprudence that, "the alleged indirect reference must be intended to draw the attention to the jury to the defendant's failure to testify ...". (Citations omitted). State v. Murray, 476 So.2d 1170 (La.App. 3rd Cir.1985).
Taking the prosecutor's remarks as a whole, it does not appear that she had any intention to indirectly comment on defendant's failure to testify. Moreover, her remarks preceding and following the questioned remark clearly indicate she was only establishing that this eyewitness was the only witness to the robbery. The questioned *180 remark was obviously no more than a remark made in passing evidencing no intent to draw attention to defendant's failure to testify. The prosecutor's remarks did not focus on defendant in terms of "he is the only one who can tell us what happened" or "the state's evidence is uncontroverted" or "the defendant is the only one who knows", State v. Jackson, 454 So.2d 116 (La.1984), but instead, the remarks obviously center on the State's witness and the State's case in chief.
For the reasons stated, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
Through this assignment, defendant argues that the trial court erred in refusing to instruct the jury and denying defendant the opportunity to argue to the jury the mandatory penalty for armed robbery.
"The question of when the penalty portion of a statute may be argued has been addressed by this Court. `When the penalty imposed by the statute is a mandatory one the trial judge must inform the jury of the penalty on request of the defendant, and must permit the defense to argue the penalty to the jury ...' State v. Washington, 367 So.2d 4 (La. 1978). Where the sentencing provision is not mandatory, as in the armed robbery statute, the Trial Court has the discretion either to permit or to deny argument that would disclose to the jury the range of sentence. State v. Bell, 377 So.2d 275, 282 (La.1979)." State v. Williams, 420 So.2d 1116 (La.1982).
Clearly under the settled jurisprudence, it was completely within the trial judge's discretion to permit or deny defendant's request. The record reflects no abuse of that discretion. For the reasons stated, this assignment is without merit.
For the above reasons, defendant's conviction and the sentence imposed are affirmed.
AFFIRMED.
NOTES
[*] Judge Alfred A. Mansour of the 9th Judicial District Court participated in this decision as Judge Pro Tempore of the Third Circuit Court of Appeal.
[1] Prior to Batson, the Louisiana Supreme Court, relying on Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 959 (1965), consistently held that a defendant is not denied equal protection when the State uses peremptory challenges to exclude minorities from jury venires unless the evidence reflects that the State has used this method to systematically exclude minorities over a period of time. In Batson, the U.S. Supreme Court rejected that evidentiary formulation for assessing a prima facie case under the Equal Protection Clause.
[2] "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant." La.C.Cr.P. art. 767.
[3] La.C.Cr.P. art. 770 provides in pertinent part:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense; ..."