669 So.2d 676 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Russel N. GATCH, Defendant-Appellant.
No. 27701-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
*677 John M. Lawrence, Shreveport, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson and Dan Keele, Asst. District Attorneys, for Plaintiff-Appellee.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
Russel Gatch was charged by bill of information with aggravated oral sexual battery, La.R.S. 14:43.4, for conduct with a seven-year-old boy, "C.M." A six-person jury found Gatch guilty of attempted aggravated sexual battery. The State subsequently billed him as a second felony offender; the *678 district court sentenced him to 7½ years at hard labor without benefit of probation or suspension of sentence.[1] Gatch now appeals, arguing four of six original assignments of error.[2] For the reasons expressed, we affirm.

Factual background
C.M.'s mother, Julie Kirsop, testified that in June or July 1991, when C.M. was seven years old, she noticed he was wearing four pairs of underwear. She asked him why he was wearing so much underwear; he seemed reluctant to answer. Eventually, however, he told her that a neighbor, Russel, had been touching him in a bad way. He also told her he thought he had done something wrong, and asked her not to be mad at him.
Ms. Kirsop and her family lived in the Broadmoor neighborhood in southeast Shreveport. She knew Russel Gatch because he and his family lived in the same area. She had seen him out in the street playing with a remote-control car; she had also seen C.M. and other neighborhood children playing with it. Until she noticed C.M. wearing multiple pairs of underwear, however, she never suspected that anything was amiss.
After talking to C.M., Ms. Kirsop called the police and filed a complaint against Gatch. She later obtained counseling for him because his behavior had changed and he seemed angry. Ms. Kirsop testified that the social worker who counseled C.M., Polly Waldron, died before trial.
C.M. was nine years old at the time of trial. He testified that Gatch had lived in his neighborhood and let him play with a remote control race car; later, when they were standing near Russel's real car, a Camaro, Gatch pulled down the boy's pants and touched the boy's penis with his hands. C.M. also testified that once, in C.M.'s bedroom, Gatch got the boy to touch his penis. C.M. described an incident in which Gatch touched his mouth to C.M.'s penis, but he was not sure when this happened. Finally, C.M. testified that Russel used to play with his own penis in the boy's presence, "flopping it up and down."

Discussion: Motion to recuse district attorney's office
By his first assignment Gatch urges the district court erred in denying his motion to recuse the Caddo Parish District Attorney's office under La.C.Cr.P. art. 680(1). In his motion for recusal, Gatch asserted that the D.A.'s office had a personal interest in the outcome of the case because of pressure exerted on it following a front-page story in the Shreveport newspaper, The Times.
The article, which appeared on December 26, 1993, featured a picture of Gatch and reported that residents of a Bossier City neighborhood had received postcards from the State informing them that a convicted child molester had moved into the area.[3] According to the article, one of the neighbors, Mike Tucker, began researching Gatch's case and learned that he was on probation for a previous conviction of aggravated oral sexual battery when the instant offense allegedly occurred. The article also reported that more than two years had elapsed since Gatch's arrest on the instant offense without a trial, although trial settings had been upset for defense counsel's honeymoon and religious holiday. Assistant District Attorney James Burke was quoted as stating that Gatch's case was not a priority because of all the murder and rape cases, but that he would consider requesting an additional jury term to clear out old cases like Gatch's.
Gatch's argument is that the pressure generated by this article caused the D.A.'s office to treat his case differently from other cases. After the article appeared, the case was assigned to a different prosecutor, and he was not allowed to enter a plea agreement that had been previously discussed.
*679 The district court held a hearing on the motion prior to trial. Mr. Burke testified that Gatch's case had indeed been originally assigned to him and that he had entered into plea discussions with defense counsel, Daryl Gold. Mr. Burke felt that six years would be sufficient, but Mr. Gold wanted five. They had also discussed, without reaching any agreement, not filing an habitual offender bill, and making this sentence concurrent with a previous one. In the course of questioning Mr. Burke, Mr. Gold admitted that he never indicated Gatch was willing to enter into an agreement.
Mr. Burke further testified that after he was interviewed by The Times, Gatch's case was assigned to a new prosecutor, David Keele, so that it could be placed on every docket as a backup case. Mr. Burke explained that Mr. Keele handled the case differently because of changed feelings of the victim's family. Ms. Kirsop, C.M.'s mother, had considered acquiescing in a plea agreement, but after the reassignment she said she wanted Gatch to go to trial and receive a longer sentence.
The district court denied the motion to recuse, stating there was a rational basis for the change in the treatment of Gatch's case. Gatch now argues that the court's failure to find he met the burden of proof required under art. 680(1) deprived him of his constitutional right to equal treatment of the law. La. Const. art. 1 § 3.
A district attorney shall be recused when he has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice. La.C.Cr.P. art. 680(1). The burden of proving a personal interest under art. 680(1) rests with the defendant, who must prove it by a preponderance of the evidence. State v. Bourque, 622 So.2d 198 (La.1993). Courts have required recusal under this article when it is shown that the D.A. has a personal interest in the defendant's case based upon a business relationship with the defendant, personal animosity between the D.A. and the defendant, and the D.A.'s victimization by the criminal activity subject to investigation. State v. Hughes, 587 So.2d 31 (La.App.2d Cir.1991), writ denied 590 So.2d 1197 (1992); Parkerson v. Norris, 529 So.2d 1392 (La. App.2d Cir.), writ denied 530 So.2d 552 (1988); State v. Snyder, 256 La. 601, 237 So.2d 392 (1970).
Gatch has not directed this court to any case in which public pressure or media attention affected the D.A.'s office to the point of requiring recusal under art. 680(1), and we are aware of none. In State v. Vaccaro, 411 So.2d 415 (La.1982), the D.A. was quoted in the local newspaper as stating that he would take personal charge of the defendants' prosecution; that his office owed it to the citizens "to make sure that these two animals do not walk our streets again." The Supreme Court found that the defendant had not established that the D.A. was personally biased or prejudiced against him under art. 680(1).
Similarly, Gatch has not directed us to any case in which the decision to assign a new prosecutor to the case was shown to prove partiality or unequal treatment. In State v. Daniels, 552 So.2d 781 (La.App. 1st Cir. 1989), writ denied 558 So.2d 581 (1990), the defendant sought to recuse the D.A., citing the latter's breach of an agreement (made by his predecessor in office) to resubmit the defendant's case to the Grand Jury. The Court of Appeal held that the defendant failed to establish that the D.A. had a personal interest in his case.
In the instant case we are unable to declare that the District Court erred in failing to find that Gatch made a case for recusal under art. 680(1). Specifically, Gatch did not show by a preponderance that the D.A.'s office had a personal interest in the case, with the effect of conflicting with the fair and impartial administration of justice. State v. Bourque, supra. It is true that after Gatch's situation was reported in The Times and the case reassigned to Mr. Keele, the prospect of a plea bargain for a lighter sentence and no multiple offender bill appear to have diminished. However, Mr. Burke testified that prior to that time he had never ascertained C.M.'s family's feelings, while the new prosecutor did so. Mr. Burke was certain that Ms. Kirsop now had an unfavorable attitude toward any plea bargain. This is a reasonable explanation for the D.A.'s "tougher" approach *680 to the case after January 1994; he is obviously entitled to consider the victim's interests. Further, there is nothing unfair or detrimental to the administration of justice in reassigning a case that has been pending for two years, in the effort to bring it to trial.
This assignment does not present reversible error.

Motion for mistrial
By his fourth assignment Gatch urges the district court erred in denying his motion for mistrial based on the prosecutor's reference during closing argument to the defendant's failure to testify or present evidence. Gatch lodged his motion after Mr. Keele made the following remarks:
What is evidence came from the witness stand. That's what you have to make your decision on[,] not something that Mr. Gold tried to get you to consider, of which there was no evidence.
Russel Gatch was an abused child. A little violin should be playing about that time. His life was screwed up because he was molested between six and ten. Does that give him an excuse to do it to [C.M.]? No way. But there wasn't even any evidence of it. It's a ploy. R.pp. 373-374.
The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee the right against self-incrimination by prohibiting the prosecution from commenting on the defendant's failure to take the stand. State v. Bourque, supra. In addition, La.C.Cr.P. art. 770(3) provides for mandatory mistrial when the district attorney, during argument, refers directly or indirectly to the defendant's failure to testify in his own defense. However, when the reference is indirect, it constitutes reversible error only when the prosecutor intended to emphasize the defendant's failure to testify. State v. Jackson, 454 So.2d 116 (La.1984).
A general statement that the prosecution's case is uncontradicted is not necessarily a prohibited comment on the defendant's failure to testify. State v. Bourque, 622 So.2d at 240. When the defendant is the only witness who could have rebutted the State's evidence, then a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify and mandates a mistrial. Id.; State v. Carney, 334 So.2d 415 (La.1976). However, where there were witnesses other than the defendant who could have testified for the defense but did not do so, then the prosecutor's argument that the State's evidence was unrebutted does not amount to a direct reference to the defendant's failure to testify. Id.; State v. Smith, 433 So.2d 688 (La.1983). Further, arguments addressing a theory of defense, not the election not to testify, reflect no intent on the part of the prosecutor to emphasize the defendant's decision not to testify, and thus do not violate art. 770(3). State v. Banks, 627 So.2d 756 (La.App.2d Cir.1993).
In the instant case, defense counsel laid the foundation for a defense to elicit sympathy, based on Gatch's own abusive childhood:
Russel Gatch, you will learn, was an abused child. He was abused from the age of six to approximately the age of ten, and, yeah, it screwed up his life. It made him do things like he did to [C.M.]
You'll learn that after this happened, Russel Gatch went into a treatment facility in New Orleans, Louisiana. He was accepted to another treatment facility in Houston, or in Texas. * * *
When he got out of the one in New Orleans, he began seeking therapyout-patient therapyfrom a therapist, who it turns out was the same therapist that was treating [C.M.]. * * * While in therapy, he participated in a program called S.A.A., which is Sexual Addicts Anonymous, which is akin to Alcoholics Anonymous, or Narcotics Anonymous. R.pp. 315-316.
The prosecutor's reference to the lack of evidence obviously referred to evidence that was never presented as to Gatch's own molestation as a child and subsequent treatment. In fact, Mr. Keele specifically argued this point immediately after the defense objection:
If Russel Gatch was in counselingand the defense doesn't have to do anything. I'm not suggesting for a second that the defense has to put on anything. Mr. Gold *681 chose not to, but at the beginning of the trial he put in some things in the opening statement that got you thinking at least, or tried to get you thinking, about Russel Gatch and what his situation was.
All that stuff about the treatment facility, all that stuff about the same therapist and all of that stuff, none of that is in evidence. So it's not for you to consider. That's my point. R.p. 374.
In short, during opening statements the defense boldly declared what it would prove, or what the jury would learn. If no such evidence is introduced, then the prosecutor's subsequent reference to the lack of evidence on those particular points should seldom, if ever, be deemed a comment on the defendant's failure to testify. The prosecutor's remarks concerned evidence that was promised and could be adduced through channels other than Gatch's own testimony. The remark was permissible. State v. Smith, supra; State v. Banks, supra.
This assignment does not present reversible error.

Improper rebuttal argument
By his fifth assignment Gatch urges the district court erred in permitting the prosecutor, during his rebuttal argument, to refer to the defendant's failure to testify or present any evidence. Specifically, Gatch contests this statement:
If you believe [C.M.], then you must find Russel Gatch guilty. If you don't, then you've got to let him free; but all the evidenceall the evidence that's uncontroverted corroborates the young man's story. R.p. 399.
At the outset we note that the defendant did not move for mistrial or object to the statement at trial. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La.C.Cr.P. art. 841 A. The absence of a timely motion for mistrial on art. 770 grounds constitutes a waiver of the defect. State v. Shepherd, 566 So.2d 1127 (La.App.2d Cir.1990); State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985).
Assuming, arguendo, that the issue had been properly preserved, we would be constrained to hold that the contested comment was not an impermissible reference to the defendant's failure to testify. As noted above, the simple reference to the State's case as uncontradicted will not usually constitute a violation of art. 770(3). State v. Bourque, supra. In State v. Shepherd, supra, we found no reversible error in the prosecutor's comment that the victim was "the only witness to this crime other than the defendant, and do you have any reasonable doubt to disbelieve her?" In State v. Newman, 491 So.2d 174 (La.App. 3d Cir.1986), the court of appeal rejected a similar argument based on the prosecutor's comment that the victim was "the only person who could tell you what really happenedshe and the defendant."
In the instant case Mr. Keele asserted that the jury should believe C.M. because his account of the crime was uncontradicted; this certainly draws less attention to the defendant's silence than the remarks in Shepherd and Newman, supra. The instant remarks, even if timely objected to, did not compromise Gatch's right of silence.
This assignment does not present reversible error.

Proof of venue
By his sixth assignment Gatch urges the district court erred in denying his motion for post verdict judgment of acquittal. The substance of the motion was that the State failed to offer any evidence of venue of the offense, thus providing insufficient evidence that the crime occurred in Caddo Parish.
La.C.Cr.P. art. 615 provides:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
Under this article, if the defendant feels that he is being charged for an offense that occurred in another parish, or that the State cannot prove the venue of the alleged *682 crime, he must raise the issue before trial by motion to quash, and it must be decided by the court before trial. Since Gatch filed no motion to quash raising venue as an issue, we find no merit in this assignment. State v. Matthews, 632 So.2d 294 (La.App. 1st Cir. 1993).[4]
Even assuming, arguendo, that the issue had been properly preserved, we would find no grounds for reversal. Under article 615, the State's burden of proving venue is only a preponderance of the evidence. The court may take judicial notice that a recognizable location is within a certain parish, even though the parish is never mentioned by name. La.C.Ev. art. 201. Ms. Kirsop testified that she lived with her family in a house near Arthur Circle and A.C. Steere Schools, which she identified as in the Broadmoor area, east of Youree Drive in southeast Shreveport. These locations are well known to be within Caddo Parish. C.M. testified that he and Gatch were "by his Camaro" on one occasion when Gatch touched his penis, and this was "in the neighborhood." R.p. 343. He also testified that his own penis was fondled by Gatch "in my bedroom." R.p. 344. In fact, C.M. testified that all the acts of sexual molestation occurred "somewhere around" his neighborhood. R.p. 346. Ms. Kirsop agreed that, to the best of her knowledge, all the acts involving her son and Gatch occurred in Caddo Parish. R.p. 330. In light of this evidence, the district court was not plainly wrong in holding that the offenses occurred "in the neighborhood, if not in the home * * * around Arthur Circle and A.C. Steere," and taking judicial notice that none of this area is outside Caddo Parish. R.p. 421.
This assignment does not present reversible error.

Conclusion
We have also reviewed the entire record and find nothing we consider to be error patent. Russel N. Gatch's conviction and sentence are therefor affirmed.
AFFIRMED.
NOTES
[1] Prior to amendment by La.Acts 1995, No. 946, § 2, the penalty provision of R.S. 14:43.4 did not deny the right of probation, parole or suspension of sentence.
[2] Assignments of error which are neither briefed nor argued are deemed abandoned. URCA-Rule 2-12.4; State v. Williams, 338 So.2d 672 (La. 1976); State v. Kotwitz, 549 So.2d 351 (La. App.2d Cir.1989), writ denied 558 So.2d 1123 (1990).
[3] The notification is a condition of probation under La.C.Cr.P. art. 895 H.
[4] In State v. Powell, 598 So.2d 454, 467 (La. App.2d Cir.), writ denied 605 So.2d 1089 (1992), this court stated unlike the claim of improper venue, which must be raised by motion to quash, the claim of no proof of venue may be raised by motion for directed verdict. In support we cited State v. Jackson, 308 So.2d 265 (La.1975). The Jackson case, however, predates an amendment which abolished the motion for directed verdict. La.Acts 1975, No. 527, § 1. Since the subsequent amendment of art. 615 by La.Acts 1988, No. 554, § 1, which required venue matters to be litigated pretrial, the legislature has foreclosed a defendant from urging no proof of venue by motion for post verdict judgment of acquittal, La.C.Cr.P. art. 821.