759 So.2d 286 (2000)
STATE of Louisiana, Appellee,
v.
Addarryll WESLEY, Appellant.
No. 33,402-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
*288 Peter J. Black, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Donald B. Dorris, Brian L. King, Assistant District Attorneys, Counsel for Appellee.
Before GASKINS, CARAWAY and DREW, JJ.
CARAWAY, J.
After a jury trial, defendant was convicted of second degree murder, a violation of La. R.S. 14:30.1. The trial court sentenced defendant to the mandatory term of life imprisonment, without benefit of parole, probation or suspension of sentence. For the following reasons, we affirm defendant's conviction and sentence.

Facts
Defendant, Addarryll Wesley, was convicted of the second degree murder of a 13-year old boy, Demario Jenkins. Wesley was one of two shooters in a drive-by shooting on May 18, 1997. The defendant, three passengers, and the driver, Larry Smith ("Smith"), were traveling through the Hollywood Heights area of Shreveport when they began firing on a group of young men. This incident was apparently precipitated by an earlier confrontation near a basketball court where Clayton Edwards fired shots in the direction of Smith's car. Evidence at trial established that there were two shooters in Smith's vehicle, Demetrius Easter (a/k/a "Papoo") and defendant, Addarryll Wesley (a/k/a "Duke"). Two passengers, sisters Rasheika and Chaka Reed (hereinafter collectively referred to as "the Reed sisters"), were also in Smith's car at the time of the shooting. The car was owned and driven by Smith. Smith, Easter and Wesley were all charged with second degree murder. Smith pled guilty to a manslaughter charge, and Easter was convicted by a separate jury of second degree murder.
At trial, Smith and the Reed sisters testified to the pertinent facts surrounding the events that led up to Demario Jenkins's murder. Smith and Easter picked up the Reed sisters to go play basketball. They went to a basketball court where Smith and Easter played while the Reed sisters watched. The four of them stayed until some boys began to spray paint gang graffiti on the basketball court. While they were leaving the Hollywood Heights area, one of the boys, Clayton Edwards, began shooting at Smith's car. The four then drove to Exposition Street in Queens-borough. Easter went into a house on Exposition Street and returned to Smith's car with a gun partially concealed in a towel. Easter put the gun in the trunk. While at the house on Exposition Street, Wesley approached the car and spoke with Smith who told him what had happened. According to Smith, Wesley "volunteered" to go along with them to "handle our business."
Smith, Easter and the Reed sisters followed Wesley to Boss Street. There, *289 Wesley parked his car and got into Smith's car. The group proceeded to another house where Wesley obtained a handgun. Wesley returned to Smith's car and got into the back seat. The group headed back to Hollywood Heights to find the boys who had shot at Smith's car. At some point, Smith stopped at a gas station where he claims that Rashieka, who had been in the front passenger seat, got into the back seat, switching places with Easter. The Reed sisters recall that Easter got into the front passenger seat at a stop sign in Hollywood Heights and retrieved his gun from the trunk. Suddenly, Easter yelled, "there they go," and he and Wesley started shooting from the car's passenger side windows. As the car drove toward the end of the street, Wesley hung out the window and shot again. The victim was shot in the back and hand, and died later that same day. Two other boys were hit by the gunfire, but survived.
Wesley's defense consisted of an attempt to prove an alibi, an account of his whereabouts at the time of the shooting, and an attempt to convince the jury that he was not one of the shooters. A unanimous jury rejected his defenses and convicted him of second degree murder. Following his conviction and sentence, Wesley lodged this appeal complaining that: (1) the trial court erred by conducting side bar conferences without his presence at the bench; (2) the trial court erred in allowing the State to comment on his failure to testify in his defense; and (3) Wesley was denied a fair trial, because of the ADA's improper actions during the trial. For the following reasons, we affirm.

Discussion

Defendant's Presence at Bench Conferences
Wesley claims that he should have been present during various side-bar conferences held at the bench between counsel and the trial judge. He argues that his absence during these critical stages of his trial is in violation of his constitutional and statutory rights, and that the bench conferences were not recorded and transcribed for our review. He does not claim, however, that he was not present in the courtroom when the side bars were conducted. Also, defense counsel never requested Wesley's presence at the bench, nor did Wesley object at trial to his inability to participate in the bench conferences.
La.C.Cr.P. art. 831 provides, in pertinent part, as follows:
A. Except as may be provided by local rules of court in accordance with Articles 522 and 551, a defendant charged with a felony shall be present:
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence.
There is no jurisprudence, or specific statutory provision that requires the defendant's presence at a bench conference in order to satisfy the requirement of article 831. State v. Glover, 93-959 (La.App. 5th Cir.3/29/94), 636 So.2d 976, writ denied, 94-1460 (La.9/3/96), 678 So.2d 544, writ granted in part and remanded, 97-1474 (La.12/19/97), 704 So.2d 242. "Presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." State v. Kahey, 436 So.2d 475 (La.1983). In certain instances, presence of defense counsel may be sufficient to satisfy the statutory requirement of presence of the defendant at important stages of a trial. State v. Smith, 587 So.2d 62 (La.App. 4th Cir. 1991); State v. Grissom, 448 So.2d 757 (La.App. 2d Cir.1984); State v. Lane, 414 So.2d 1223 (La.1982). The right to be present may be waived by the defendant or by his attorney, or by defendant's voluntary absence or his failure to assert an objection to a discussion held in his absence. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Kahey, supra; State v. Lane, supra. A defendant need not be present during a private *290 discussion between the trial judge and a member of the jury pool who has not yet been "called" or "examined" as a prospective juror. State v. Glover, supra; La. C.Cr.P. art. 783.
In felony cases, the clerk of court or court stenographer shall record all proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel. La. C.Cr.P. art. 843; State v. Mamon, 26,337 (La.App.2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.6/2/95), 654 So.2d 1104; State v. Ford, 338 So.2d 107 (La. 1976). To effectuate the guarantee of an appeal in felony cases, a complete record is needed for proper support and review of assigned errors. Mamon, supra.; State v. Richardson, 529 So.2d 1301, 1308 (La.App. 3d Cir.1988), writ denied, 538 So.2d 587 (La.1989). However, an omission from the record which is inconsequential and immaterial to a proper review on appeal does not require reversal of a conviction. Mamon, supra.; State v. Johnson, 438 So.2d 1091, 1104 (La.1983).
In this case, the record shows that in most of the instances Wesley cites, the trial court held discussions at the bench regarding "housekeeping" matters, or ministerial functions of the trial court, as opposed to discussions regarding the admissibility of evidence. The trial judge may conduct the course of the trial at his discretion, particularly as it may concern a recess or lunch break. These immaterial matters did not involve Wesley's substantive rights. Therefore, Wesley's absence from various bench conferences does not run afoul of La.C.Cr.P. art. 831. The record also reveals that the trial judge did not err in regard to his private discussion with a prospective juror which led to the juror being excused from the jury pool.
With regard to the other cited instances, the participation of defendant's retained counsel during these discussions, as well as Wesley's continuous presence in the courtroom, are sufficient to provide the constitutional protection mandated by La. C.Cr.P. art. 831. The court's determinations and rulings on the admissibility of evidence were sufficiently reflected on the record and thus rendered in the presence of the defendant despite the informal discussion between the trial court and counsel in the prior bench conferences. This assignment of error lacks merit.

Prosecutor's Comments on Defendant's Failure to Testify
With this assignment of error, Wesley claims that the assistant district attorney ("ADA") made improper statements regarding his failure to testify during the state's rebuttal argument to the jury. Defendant cites three improper references for our review:[1]
"Now, she tells you, and I wasn't going to say it, that the defendant didn't testify in the trial. She is right. He didn't. He didn't have to. So he didn't testify." "That their big alibi defense that they told you about at the beginning of trial, and, yeah, like we told you, they don't have to present evidence, and the defendant doesn't have to testify, as he didn't in this case."
"Addarryll Wesley didn't have to take the witness stand and he didn't. Nobody has got to do anything when they are accused of a crime."
Defense counsel neither objected to these references, nor motioned the trial court for a mistrial.
*291 Wesley argues that the above statements by the ADA are direct and impermissible references to his failure to testify under La.C.Cr.P. art. 770.[2] He complains that these references denied him a fair trial. The state responds by explaining that the statements were made by the ADA only after defense counsel mentioned Wesley's decision not to testify in her closing argument.[3] Therefore, the state argues that defendant "opened the door" to its rebuttal argument.
We first note that the state's "opening the door" argument has in the past been rejected by our supreme court. See State v. Marcello, 375 So.2d 94 (La.1979); State v. Wright, 251 La. 511, 205 So.2d 381 (1967). La.C.Cr.P. art. 770 prohibits the district attorney from making any reference, direct or indirect, regarding the defendant's failure to testify, even if in rebuttal or to counter defense counsel's similar remarks during closing.
As stated by the supreme court in State v. Johnson, 541 So.2d 818, 822 (La.1989):
La.C.Cr.P. art. 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense...." Art. 770(3)'s prohibition against such prosecutorial comment safeguards the defendant from unfavorable inferences which might otherwise be drawn from his silence. State v. Fullilove, 389 So.2d 1282 (La.1980). The rule helps implement the defendant's Fifth Amendment right against self-incrimination, and is constitutionally required. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).
The Johnson court further noted that even in the case of an indirect reference to the failure of defendant to testify, "where the defendant is the only witness who could have rebutted the state's evidence, `a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify' and mandates a mistrial." Id. quoting State v. Perkins, 374 So.2d 1234, 1237 (La.1979).
Nevertheless, in this case, Wesley's failure to move for mistrial or object to the prosecution's statements is fatal to his claim of error on appeal. State v. Pearson, 336 So.2d 833, 836 (La.1976); State v. Gatch, 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676, writ denied, 96-0810 (La.9/20/96), 679 So.2d 429. The language of Article 770, while requiring the motion for mistrial to be asserted by defendant, additionally recognizes that the defendant may elect to continue the trial with only an admonition to the jury being given. Thus, when the defendant does not raise a timely motion for mistrial for the prosecutor's comment on the defendant's failure to testify, he has elected not to remedy any negative effect that that comment may have had on the jury and to continue the trial. The motion for mistrial is a necessity, and the defense, after waiving the issue at trial, cannot raise it for the first time on appeal. State v. Gatch, supra.

Prosecutor's MisconductDenial of a Fair Trial
Defendant complains of four separate instances when, in the presence of the jury, the ADA made improper statements or asked witnesses improper questions.
*292 Specifically, the defendant argues that the ADA's conduct denied him a fair trial, when:
1) The ADA asked Larry Smith about Demetrius Easter's conviction;
2) The ADA expressed his opinion of the evidence during closing argument;
3) The ADA suggested that a defense witness violated the rule of sequestration; and
4) The ADA suggested that defense counsel's objection was an attempt to coach a defense witness, Vontrell Ashley, during cross examination.
In regard to each of these alleged errors, defense counsel did not object to any of the complained of actions. Consequently, these alleged errors were not properly preserved for review on appeal. La.C.Cr.P. art. 841. This assignment of error lacks merit.
We have reviewed the record for error patent, La.C.Cr.P. art. 920(2), and found none. The conviction and sentence are affirmed.
AFFIRMED.
GASKINS, J., concurs.
NOTES
[1] Two additional statements in the state's rebuttal made reference to the failure of the defendant to present the testimony of his girlfriend in support of his alibi defense. This "lack of evidence" argument made by the prosecutor does not provide a basis for mistrial. State v. Gatch, 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676, writ denied, 96-0810 (La.9/20/96), 679 So.2d 429. An attack on a lack of proof in support of defendant's theory of the case does not necessarily reflect an intent to emphasize defendant's failure to testify. State v. Hattaway, 28,060 (La.App.2d Cir.5/8/96), 674 So.2d 380, writ denied, 96-1900 (La.1/10/97), 685 So.2d 141.
[2] La.C.Cr.P. art. 770 states in pertinent part:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(3) The failure of the defendant to testify in his own defense.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[3] In one passing reference without any further discussion, defense counsel's closing argument stated: "He didn't get on the stand to testify, but we talked about that, he doesn't have to testify, he doesn't have to testify."