DREW, J.
 

 11 David Pugh, Jr., appeals his conviction for the crime of molestation of a juvenile. We affirm in all respects.
 

 CHRONOLOGY
 

 In the early part of 2002, defendant, then age 32 (DOB October 13, 1969), had lewd contact and nonconsensual sex in western Caddo Parish with a 14-year-old female (DOB October 17, 1987) named D.J.
 
 [1]
 
 Thus the age difference between the two was almost exactly 18 years.
 
 [2]
 
 An amended bill of information, filed on January 14, 2008,
 
 [3]
 
 charged him with molestation of a juvenile, a violation of La. R.S. 14:81.2. On January 15, 2008, the required unanimous six-person jury found Pugh
 
 *1086
 
 guilty as charged. A post-judgment motion for acquittal was denied. After his adjudication as a fourth felony habitual offender,
 
 [4]
 
 a'presentence investigation was ordered. Pugh was sentenced to life at hard labor, without benefits. A motion to reconsider sentence was denied.
 

 FACTS
 

 At the preliminary examination, Det. Janice Dailey of the Shreveport Police Department testified that D.J. stated that the sexual intercourse happened “on the side of Interstate 20, somewhere between the city limit sign and the Pines Road exit.” Therefore, the crime occurred in both Cad-do Parish and in Shreveport.
 

 li>At no point in the trial court was venue placed at issue. During her trial testimony, Det. Dailey was neither asked about, nor did she testify as to the location of the crime. Her testimony established the birth dates of Pugh, D.J., and D.J.’s son, Q.J.
 
 [5]
 
 Through Dailey’s testimony, the state introduced forms authorizing the taking of epithelial cells. The officer testified that she utilized cheek swabs to capture cells by which to establish DNA profiles from D.J. and Q.J. Det. Scott Musser of the SPD testified that he took cells from Pugh, pursuant to a signed authorization from Pugh.
 

 D.J. identified Pugh in court and testified about his picking her up on Laura Street in Shreveport. He offered her a ride to her grandmother’s house and she got into the car with him, but they went elsewhere.
 

 Apparently D.J. misspoke in part when she testified at trial:
 
 [6]
 

 Well, we went — like I said, we went on the interstate, but once we got on the interstate the car broke down. And that’s when I noticed we was like across the Dallas state line. And the car had broke down.
 

 (Our emphasis.)
 

 D.J. said that when they got on the interstate Pugh was not talking to her; instead, “The music was playing.” When asked when Pugh started talking to her, she answered that he asked her for sex and she refused. When asked what happened when the car broke down, she answered:
 

 A. He reached over and — do you want the details and all of how he did it?
 

 Q. Yeah. Was he touching you at all?
 

 |oA- Yes.
 

 Q. Where was he touching you?
 

 A. On my thigh part, rubbing his hand.
 

 Q. Was this while the car was still moving?
 

 A. Yes.
 

 Q. And after the car broke down, did he continue to touch you?
 

 A. Yes.
 

 Q. And how was he touching you then?
 

 A. He started feeling on me then.
 

 Q. Did he lean the seat back in the car at all?
 

 A. He leaned my seat back, the passenger seat back.
 

 Q. And what happened then?
 

 A. That’s when he climbed on top.
 

 Q. And what did he do after he climbed on top of you?
 

 
 *1087
 
 A. He pulled my clothes down and held both my arms back and had intercourse.
 

 Q. Were you telling him no?
 

 A. I had told him don’t do it. I told him to stop and he still did.
 

 Q. And he held you down?
 

 A. Yes.
 

 D.J. further testified that:
 

 • after Pugh had intercourse with her, they waited a few minutes before the tow truck arrived and rode back in the truck to Shreveport;
 

 • Q. J. was born on October 7, 2002, but when the boy was born she had no idea who the father was;
 

 14»
 
 she had sexual relations with others prior to the baby being conceived;
 

 • she did not remember discussing the incident with a woman police officer, giving a recorded statement, or telling the officer that the incident happened just after school had gotten out for spring break;
 

 • she had sex with Pugh only the one time;
 

 • after the incident, Pugh and the wrecker driver dropped her off in Shreveport, near her cousin’s house;
 

 • she was 10 days shy of 15 years old when the baby was born;
 

 • Q. J. was not born prematurely; and
 

 • at the time of the birth, she asked her mother who the baby looked like, and her mother told her the baby looked like Pugh.
 

 DNA evidence was introduced through the testimony of Connie Brown, a senior forensics scientist of the North Louisiana Criminalistics Laboratory, who indicated that the baby’s father was indeed Pugh.
 

 Det. Dailey was recalled to the stand to testify about taking D.J.’s recorded statement, in which the victim could not provide an exact date for the incident, but had stated that it was sometime around the time she had gotten out of school for spring break. Dailey added:
 

 She specifically mentioned the best— and according to my report — something about spring break, getting out or she had either just gotten out for spring break or was just going back from spring break. I think she couldn’t exactly remember which it was.
 

 DISCUSSION
 

 I. Alleged Unconstitutionality of La. Code Cr. P. art. 615
 

 In appellate brief, defendant challenges the constitutionality of venue being decided by judge, instead of by jury. This matter was not specially pled in the trial court, so it is not properly before us. We decline to consider |sit.
 
 See State v. Campbell,
 
 263 La. 1058, 270 So.2d 506 (1972), and
 
 State v. Hatton,
 
 2007-2377 (La.7/1/08), 985 So.2d 709.
 

 II. Venue
 

 La. C. Cr. P. art. 615 states:
 

 Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
 

 (Our emphasis.)
 

 Venue was never placed at issue in the trial court, not before the trial, not during the trial, not in argument, not in any requested jury charge, and not in the motion for post-verdict judgment of acquittal. Nonetheless, the defendant argues, without authority, that the state still should
 
 *1088
 
 have proven venue at trial by a preponderance of the evidence.
 

 State v. Rideout,
 
 42,689 (La.App. 2d Cir.10/31/07), 968 So.2d 1210, is one of many cases holding that a defendant’s failure to file a motion to quash waives any issue of venue.
 

 Through discovery and prior sworn testimony, it was clear that the criminal act(s) occurred in western Caddo Parish. If Pugh felt, however, that all criminality occurred in Texas, then nothing precluded his filing a motion to quash, to place the matter at issue. As the perpetrator, he presumably knew where the actual act occurred and could have provided this information to counsel. Defendant has not distinguished his case from those of other defendants who have waived this issue. Had this issue been traversed, there is nothing to suggest that Det. Dailey would have testified |fiany differently than she did in her sworn preliminary examination testimony, which established Caddo Parish as the locus of the crime.
 

 In
 
 State v. Clark,
 
 2002-1463 (La.6/27/03), 851 So.2d 1055,
 
 cert. denied,
 
 540 U.S. 1190, 124 S.Ct. 1433, 158 L.Ed.2d 98, the Louisiana Supreme Court held that a defendant who fails to file a motion to quash prior to trial has waived his right to assert the claim of improper venue on appeal. Likewise, in
 
 State v. Pierre,
 
 2004-0010 (La.App. 4th Cir.2/25/04), 869 So.2d 246, the Fourth Circuit came to the same conclusion.
 

 This conviction is neither patently erroneous, nor does it produce unjust results.
 
 See State v. Surratt,
 
 2005-1406 (La.App. 3d Cir.6/7/06), 932 So.2d 736,
 
 unit denied,
 
 2006-2100 (La.6/1/07), 957 So.2d 165.
 

 Interstate territorial jurisdiction is arguably a more difficult issue than intrastate venue, though this defendant surely knew where he picked up the victim, when he began touching her, where he held her down, where the act of intercourse occurred, and where he dropped her after the event. A judge alone must decide the issue of territorial jurisdiction, but only if that issue is brought before the court before trial, as mandated by the Code.
 
 [7]
 

 Very recently, in
 
 State v. Johnson,
 
 43,-843 (La.App. 2d Cir.1/28/09), 2 So.3d 606, with regard to La. C. Cr. P. art. 615, this court stated:
 

 Under this article, if the defendant feels that he is being charged for an offense that occurred in another parish, or that the state cannot prove the venue of the alleged crime, he must 17raise the issue before trial by a motion to quash, and it must be decided by the court before trial.
 
 State v. Rideout, supra; State v. Gatch,
 
 27,701 (La.App.2d Cir.2/28/96), 669 So.2d 676,
 
 writ denied,
 
 1996-0810 (La.9/20/96), 679 So.2d 429. The reduced burden of proof listed in La. C. Cr. P. art. 615 states that the venue of the crime is not an element of the crime. Accordingly, the defendant’s failure, to file a motion to quash waives any issue of venue.
 
 State v. Rideout, supra; State v. Gatch, supra.
 

 III. Ineffectiveness of Counsel
 

 Defendant argues that if the venue issue was not properly preserved, then trial
 
 *1089
 
 counsel erred in failing to raise the issue at the trial court level at the time it became obvious that the trial court lacked jurisdiction over the matter, and that inaction by-trial counsel would amount to deprivation of effective assistance of counsel. We disagree. The defense lawyer may have deliberately chosen a strategy at trial of avoiding the excessive airing of these sordid details.
 

 A defendant who did not file a motion to quash raising venue as an issue could not successfully assert on appeal that the trial court lacked jurisdiction due to failure to prove venue.
 
 State v. Matthews,
 
 93-0275 (La.App. 1st Cir.1993), 632 So.2d 294. Venue is a factual question. Even if we were to examine this issue, it is clear to us that ample evidence is in this record establishing Caddo Parish as the venue of this crime, which started and ended in Caddo Parish, Louisiana.
 

 At any rate, any claim of ineffective assistance is usually addressed not on direct appeal but in post-conviction proceedings, where a record can be developed.
 
 State v. Leger,
 
 2005-0011 (La.7/10/06), 936 So.2d 108,
 
 cert. denied,
 
 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100;
 
 State v. Langston,
 
 43,923 (La.App. 2d Cir.2/25/09), 3 So.3d 707.
 

 This record contains information establishing venue in the detective’s preliminary hearing testimony. The record does not support a finding that counsel’s failure to file a motion to quash fell below the objective standard of reasonableness under prevailing professional norms and resulted in actual prejudice to the defendant.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 State v. Matthis,
 
 2007-0691 (La.11/2/07), 970 So.2d 505,
 
 writ denied,
 
 2000-3552 (La.11/9/01), 801 So.2d 358.
 

 IV. General Insufficiency
 

 The provisions of La. R.S. 14:81.2(A) state:
 

 Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, ■with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
 

 (Our emphasis.)
 

 Our law on sufficiency of evidence is well settled.
 
 [8]
 

 lain
 
 State v. LeBlanc,
 
 506 So.2d 1197 (La.1987), the supreme court held that the “use of force” element requires proof of
 
 *1090
 
 force “substantially greater than or substantially different from the force which is necessary to commit the less serious offense of indecent behavior with juveniles.”
 

 Article 611(A) states that if acts constituting an offense
 
 or if the elements of an offense
 
 occurred in more than one place, in or out of the parish or
 
 state,
 
 the offense is deemed to have been committed in any parish in this state in which any such act or
 
 element
 
 occurred. This evidence convinces us, beyond a reasonable doubt, that Pugh, when he picked up D.J., had “the intention of arousing or gratifying his sexual desires.” He then committed many lewd or lascivious acts upon D.J. by rubbing her while the car was still moving. It is therefore reasonable to conclude that at least some of this reprehensible conduct occurred in Caddo Parish.
 

 The state argues that:
 

 • some of the continuing force and duress over the victim at least started in Caddo Parish, thus proving venue as governed by La. C. Cr. P. art. 611;
 

 • D.J.’s testimony “clearly” demonstrated force and duress over her occurring in Shreveport by Pugh having her get into his vehicle and then taking her “somewhere other than her intended destination”; and
 

 11f># at that point, D.J. found herself in a moving vehicle on an interstate highway, subject to Pugh’s discretion and control, sufficiently proving force and duress.
 

 Enough of the continuing criminal conduct occurred in Caddo to allow us to affirm this conviction.
 

 An analogous case is this court’s opinion in
 
 State v. Overby,
 
 30,589 (La.App. 2d Cir.4/8/98), 714 So.2d 28, wherein venue was at issue. In affirming a denial of a similar motion to quash, the venue calculus included:
 

 • the crime occurred, at least in part, in a private vehicle in transit in the state; and
 

 • the defendant returned the victim to the parish (of contested venue) after the rape.
 

 The jury here followed their instructions, and apparently believed the victim that the defendant used force upon her.
 

 Defendant made a point in closing argument that because Q.J. was born in early October (and D.J. testified he was not premature), the conception more likely occurred in early January, not around the time of D.J.’s spring break. This is of no moment. Whatever the time frame, Pugh was the child’s father. The jury heard the young woman testify as to the force used by the defendant, and the jury felt it sufficient to render a verdict of guilty as charged for the crime of molestation of a juvenile. We agree. We affirm the conviction.
 

 DECREE
 

 The defendant’s conviction and sentence are AFFIRMED.
 

 [1]
 

 . Initials of the victim are used per La. R.S. 46:1844(W).
 

 [2]
 

 . Far more than the more than two years required by the statute.
 

 [3]
 

 . Six years after the molestation.
 

 [4]
 

 . He has actually been convicted of six felonies.
 

 [5]
 

 . See Footnote 1.
 

 [6]
 

 .Neither the state nor the defendant followed up on this answer. Could she have meant that they had passed a road sign to Dallas?
 

 [7]
 

 . Courts throughout the nation are split as to whether territorial jurisdiction should be decided by a judge or jury, and there may be more jurisdictions that would send the question to a jury. This being written, that result is not mandated and we feel that the better practice would be to have the matter decided by a judge.
 

 For thorough treatment of both sides of this issue, see
 
 People v. Betts,
 
 34 Cal.4th 1039, 23 Cal.Rptr.3d 138, 103 P.3d 883 (2005), and
 
 State v. Butler,
 
 353 Md. 67, 724 A.2d 657 (1999).
 

 [8]
 

 . The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia, supra; State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Cummings,
 
 95-1377 (La.2/28/96), 668 So.2d 1132;
 
 State v. Murray,
 
 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488,
 
 writ denied,
 
 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing
 
 *1090
 
 court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State
 
 v.
 
 Wiltcher,
 
 41,-981 (La.App. 2d Cir.5/9/07), 956 So.2d 769;
 
 State v. Burd,
 
 40,480 (La.App. 2d Cir. 1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35.